LEVINSON ET AL. *v.* DEUPREE, ANCILLARY
ADMINISTRATOR.

No. 439.   Argued February 5–6, 1953.—Decided June 1, 1953.

*Charles E. Lester, Jr.* argued the cause for petitioners.
With him on the brief was *Stephens L. Blakely.*

*Robert S. Marx* argued the cause for respondent.   With
him on the brief was *Harry M. Hoffheimer.*

Mr. Justice Frankfurter delivered the opinion of the Court.

Katherine Wing of New York was killed in a collision between two motorboats on the Ohio River within Campbell County, Kentucky, on June 19, 1948. On December 7, 1948, Deupree was appointed ancillary administrator of Katherine Wing's estate by the County Court of Kenton County, Kentucky, and on the same day he filed in the United States District Court for the Eastern District of Kentucky a libel seeking to recover damages for her death from petitioners Levinson and Hall, the owners and operators of the boats which had collided. The libel alleged Deupree's appointment as administrator. On March 3, 1949, petitioners answered with a general denial. On July 7, 1949, petitioners having moved for an order requiring the administrator to provide security for costs, Deupree filed an "affidavit for leave to sue *in forma pauperis.*" This affidavit stated that "decedent was possessed of no estate out of which costs or expenses herein can be paid or from which security therefor can be given." On the same day petitioners filed a special demurrer putting in issue Deupree's capacity to sue, on the ground that the appointment of an administrator in a county where there is no estate is void. *Jewel Tea Co.* v. *Walker's Administrator,* 290 Ky. 328, 331, 161 S. W. 2d 66, 68. Deupree thereupon obtained another appointment as ancillary administrator, this time from the County Court of Campbell County, where the cause of action for wrongful death, itself an estate, had its *locus.* On July 29, 1949, Deupree filed a motion to amend his libel by alleging this new appointment. To the amended libel, petitioners, on September 9, 1949, entered a general demurrer.

The District Court sustained both the general and special demurrers. It held that the Kenton County appointment of Deupree as administrator was void and that

the amended libel alleging the Campbell County appointment "cannot relate back to the inception of the libel proceeding." The claim as set out in the amended libel, the court held, was therefore barred by the Kentucky one-year statute of limitations, and the libel had to be dismissed.

The Court of Appeals agreed that under Kentucky law the Kenton County appointment was defective, although it held that the existence of a cause of action alone is sufficient, in Kentucky, to support the appointment of an administrator, and hence that the Campbell County appointment was valid. The court agreed also that under the Kentucky law the amended libel was barred. But, the Court of Appeals held, as to this matter, Kentucky law was not controlling. And it reversed and remanded for trial. 186 F. 2d 297. We denied a petition for certiorari to review this judgment, 341 U. S. 915, but, after a decree had been awarded to the administrator and the Court of Appeals had affirmed, 199 F. 2d 760, we granted the present petition. 344 U. S. 903. Although the issue, embedded as it is in peculiarities of Kentucky law, is now seen to be a narrow one, it appeared to us at first that there was involved a broader and more important question of the binding force of local law in federal admiralty courts administering remedies created by that law.

The maritime law does not allow recovery for wrongful death. *The Harrisburg,* 119 U. S. 199; *Butler* v. *Boston & Savannah Steamship Co.,* 130 U. S. 527, 555. In 1920, Congress adopted a Lord Campbell's Act restricted to deaths on the high seas, 41 Stat. 537 *et seq.,* 46 U. S. C. § 761 *et seq.* In further alleviation of the maritime law, we have held that "where death . . . results from a maritime tort committed on navigable waters within a State whose statutes give a right of action on account of death by wrongful act, the admiralty courts will entertain a

libel *in personam* for the damages sustained by those to whom such right is given." *Western Fuel Co.* v. *Garcia,* 257 U. S. 233, 242. Like the *Garcia* suit, the present libel was brought under a State wrongful death statute. Ky. Rev. Stat., 1946, § 411.130. As we held in *Garcia,* a time limitation deemed attached to the right of action created by the State is binding in the federal forum. *The Harrisburg, supra,* 119 U. S., at 214. Similarly, when the statute, as it does in this case, vests the right of action in "the personal representative of the decedent," it is not for the forum provided by another jurisdiction to vest the right elsewhere; such a forum must look to the local law to determine the meaning of the phrase "personal representative." But the narrow question here is whether such a forum, accepting and enforcing the limited scope given to the right by the local law which created it, must also be bound by the dubious and perhaps conflicting intimations on *elegantia juris* to be found in local decisions, whether, that is, a federal court is imprisoned by procedural niceties relating to amendments of pleadings.

The United States District Court for the Eastern District of Kentucky heard this suit sitting in admiralty. Its jurisdiction did not derive from diversity of citizenship; indeed there was no such diversity. *Erie R. Co.* v. *Tompkins,* 304 U. S. 64, is irrelevant. The court in this case was not "in effect, only another court of the State," *Guaranty Trust Co.* v. *York,* 326 U. S. 99, 108. The reasons why the court heard the suit and why it deemed itself controlled by the Kentucky statute of limitations and by the Kentucky definition of "personal representative" are quite different. The District Court adopted and enforced the *obligatio* created by the State of Kentucky not because it sits in Kentucky and responds to the desirability of uniformity in the administration of justice within that State. In the absence of congressional action, the court adopted

and enforced the *obligatio* created by Kentucky as it would one originating in any foreign jurisdiction. *La Bourgogne,* 210 U. S. 95, 138; *The Hamilton,* 207 U. S. 398, 405. And it was bound to enforce it as it found it, but not bound beyond that to strive for uniformity of results in procedural niceties with the courts of the jurisdiction which originated the *obligatio.* Even in diversity cases, when "a right is enforceable in a federal as well as in a State court," and the federal court sits as "another court of the State," we have recognized that "the forms and mode of enforcing the right may at times, naturally enough, vary because the two judicial systems are not identic." *Guaranty Trust Co.* v. *York, supra,* 326 U. S., at 108. Whether, if this were a diversity case, we would consider that we are here dealing with "forms and modes" or with matters more seriously affecting the enforcement of the right, it is clear that we are not dealing with an integral part of the right created by Kentucky.

We hold that federal practice controls the question whether the administrator, holding an effective appointment under Kentucky law, should be permitted to amend his libel so as to allege that appointment, at a time when the applicable statute of limitations would bar a new suit. And we hold that the administrator should be permitted to do so. Rule 23, Rules of Practice in Admiralty and Maritime Cases; cf. *New York Central R. Co.* v. *Kinney,* 260 U. S. 340, 346.

*Affirmed.*