COMPANIA TRASATLANTICA ESPANOLA, S.A., Defendant, Appellant,

v.

Carmen MELENDEZ TORRES, etc., et al., Appellees.

INTERNATIONAL SHIPPING AGENCY, INC., et al., Third-Party Defendants, Appellants,

v.

Carmen MELENDEZ TORRES, etc., et al., Appellees.

Nos. 6558, 6566.

United States Court of Appeals First Circuit.

Heard Feb. 10, 1966.

Decided March 25, 1966.

---

Vicente M. Ydrach, San Juan, P. R., with whom Hartzell, Fernandez & Novas, San Juan, P. R., was on brief, for Compania Trasatlantica Espanola, S. A.

Francisco Agrait Oliveras, San Juan, P. R., with whom Rivera Zayas, Rivera Cestero & Rua, San Juan, P. R., was on brief, for International Shipping Agency, Inc., and Maryland Casualty Co.

Harvey B. Nachman, San Juan, P. R. with whom Nachman & Feldstein, San Juan, P. R., was on brief, for Carmen Melendez Torres, etc., et al.

Before ALDRICH, Chief Judge, and MARIS * and McENTEE, Circuit Judges.

McENTEE, Circuit Judge.

These cases arise out of an accident which occurred aboard a vessel owned by the defendant, Compania Trasatlantica Espanola, S. A., (hereinafter called the shipowner) as a result of which plaintiffs' intestate, one Martin Beltran, lost his life. On November 8, 1962, the deceased, who was one of a gang of longshoremen employed by International Shipping Agency, Inc., an independent stevedoring contractor, was engaged in handling cargo on said vessel which had arrived that morning at the port of San Juan, Puerto Rico. After finishing the

* By designation.

job, the longshoremen proceeded to put back the hatch beams and the hatch boards they had removed earlier in order to unload the cargo from the hold. During the course of this operation the deceased stepped on a short, warped or defective hatch board which had been set in place, causing him to fall forward and then down into the ship's hold—a distance of some thirty or forty feet. Shortly thereafter he was carried from the hold by fellow employees and taken to the hospital where he died some two hours later.

In the principal action the deceased's widow, acting on her own behalf and on behalf of the three minor children of the marriage, seeks to recover damages against the shipowner for conscious pain and mental anguish suffered by her husband between the time of the accident and the time of death, and damages for the pecuniary and other loss suffered by her and the children as a result of his death. Plaintiffs set forth two claims for relief against the shipowner. The first is based on negligence; the second on unseaworthiness of the vessel. The shipowner joined issue and impleaded the stevedoring contractor and its insurer, Maryland Casualty Company. In this third party action, the shipowner seeks to be indemnified in the amount of any judgment obtained against it in the principal action on the theory that the stevedoring contractor had the custody and control of the hatch boards and of that part of the vessel where the accident happened.

At the beginning of the trial and again at the end of the plaintiffs' case, the shipowner moved that plaintiffs' claim of unseaworthiness be stricken and that they be allowed to proceed on the negligence claim only. These motions were denied. The court submitted the case to the jury on both issues.[1] In the prin-

cipal case the jury found for the plaintiffs and awarded $10,000 to the widow; $10,000 to each of the three children and $55,000 for the suffering of the deceased while injured and still alive. In the third party suit the jury rendered a verdict in favor of the shipowner and against the stevedoring contractor and its surety in the same amounts awarded to the plaintiffs.

The cases are before us on the appeal of the defendant shipowner from that part of the judgment requiring it to pay any amounts to the plaintiffs, and on the appeal of the third party defendants (the stevedoring contractor and its surety) from the judgment in favor of the plaintiffs in the principal action and in favor of the third party plaintiff (the shipowner) in the third party suit.

■ Appellants' principal contention is that the trial court erred in submitting the issue of unseaworthiness to the jury. This depends upon the meaning of the appropriate Puerto Rican statute. It has been long established that in the absence of statute there is no right of recovery for wrongful death under the general maritime law. The Tungus v. Skovgaard, 358 U.S. 588, 79 S.Ct. 503, 3 L.Ed.2d 524 (1959); Levinson v. Deupree, 345 U.S. 648, 73 S.Ct. 914, 97 L.Ed. 1319 (1953); The Harrisburg, 119 U.S. 199, 7 S.Ct. 140, 30 L.Ed. 358 (1886). Congress has created such a right in the case of seamen[2] and in certain other cases involving death on the high seas.[3] Since plaintiffs' intestate was not a seaman and his death was caused by injuries sustained within the territorial waters of Puerto Rico, this case does not come within the purview of either of these statutes. There being no applicable federal statute, it is undisputed that plaintiffs' right of recovery here depends entirely upon Puerto Rican law. The Tungus v. Skovgaard, supra. It is also

---

1. The shipowner also excepted to the court's instruction to the jury on the issue of unseaworthiness.

2. The Jones Act, 46 U.S.C. § 688, applies only in cases of "the death of any seaman * * *."

3. The Death on the High Seas Act, 46 U.S.C. § 761 et seq., provides a right of action only for a "wrongful act, neglect, or default occurring on the high seas beyond a marine league from the shore of any State * * *."

undisputed that the primary source of liability for wrongful death under Puerto Rican law is Section 1802 of the Civil Code.[4] This section provides in part as follows: "A person who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done. * * * "[5]

■ The first question to be decided is whether this statute is broad enough to include a right of action for wrongful death based on unseaworthiness. If so, admiralty will adopt this right of action and enforce it in a federal court. It is to be noted that Section 1802 limits liability to situations where there is "fault or negligence" and obligates the one causing damage to another to repair all the damage done to any one who sustains it.[6] Any wrong for which plaintiffs' intestate could have recovered if he had lived may be maintained by "another" who has been caused damage. The general maritime law applies in Puerto Rico waters and the decedent here could have recovered for unseaworthiness had he lived. Guerrido v. Alcoa Steamship Co., 234 F.2d 349, 355 (1st Cir. 1956). The evidence clearly shows that defendant's vessel and its appurtenances (hatch boards) were not fit for their intended purpose. Crumady v. The Joachim Hendrik Fisser, 358 U.S. 423, 79 S.Ct. 445, 3 L.Ed.2d 413 (1959).

■■ Appellants claim that the word "fault" and the word "negligence" as used in this statute are synonymous and contend that since unseaworthiness is "a species of liability *without* fault" unseaworthiness cannot be fault or negligence within the meaning of Section 1802. We cannot accept this contention. In this connection we quote from Skovgaard v. The M/V Tungus, 252 F.2d 14, 17 (3d Cir. 1957), affirmed, 358 U.S. 588, 79 S.Ct. 503, 3 L.Ed.2d 524, where the Court said:

"It is urged that since unseaworthiness is spoken of as a species of liabili-

ty without fault, it cannot be a 'wrongful act, neglect or default' within the meaning of the statute. However, the characterization of unseaworthiness as liability without fault is dangerously deceptive. For urgent and sound reasons of public policy, the law has imposed the absolute duty upon the shipowner to provide a seaworthy vessel, and liability results only as a consequence of the breach of that duty. If 'fault' means negligence alone, of course no fault is required, and to that extent only, the phrase 'liability without fault' is accurate. But to say that one who breaches a duty is without fault is a logical as well as a legal incongruity."

Under this section the word "fault" should not be equated with the word "negligence." Each word has its own independent meaning. Fault encompasses something different than negligence. It means breach of obligation. Any breach of warranty or obligation is fault within the meaning of this statute whether imposed by law, by contract or by statute. Unseaworthiness is such a breach. Clearly either fault or negligence will support recovery under Puerto Rican law. Mendez v. Serracante, 53 P.R.R. 807 (1938).

■■ A longshoreman has legal right to a seaworthy ship. If a person infringes upon this right and harm results by reason of the ship being unseaworthy, such person is at fault and under the provisions of Section 1802 should be called upon to "repair the damage so done." Thus, we conclude that this statute does encompass an action for damages for wrongful death based on unseaworthiness, and the district court properly allowed the case to go to the jury on the issues of negligence and seaworthiness. See Skovgaard v. The M/V Tungus, supra, and Union Carbide Corporation v. Goett, 278 F.2d 319 (4th Cir. 1960).

4. Correa v. P. R. Water Resources Authority, 83 P.R.R. 139, 142–143 (1961).

5. 31 L.P.R.A. § 5141.

6. See n. 4, supra.

Appellants further contend that the judgment should be set aside because the evidence indicates that plaintiffs' intestate knew of the dangerous condition that caused his death and, therefore, his own negligence was the proximate cause of his death. We find no merit in this contention. There was no direct evidence as to what the decedent knew or saw before his fatal accident. This was a matter for the jury to decide and we see no reason to disturb the jury's finding. Moreover, contributory negligence is not a bar to recovery under Puerto Rican law.[7] It goes only to the mitigation of damages.

Appellants' third assignment of error is that plaintiffs should not have been allowed to recover for decedent's conscious pain and mental anguish during the interval of time between his accident and his death because this constituted a part of the inheritance of all his heirs and all of them were not made parties to this suit. The evidence shows that the decedent also had five children of extra marital relations. The question of non-joinder was not raised prior to judgment in the court below and we are not obliged to consider it now. Even if it had been properly raised we see no compelling reason to dismiss the suit on this ground. Where, as here, it appears that the absent parties will not be harmed by the judgment, an appellate court should be reluctant to dismiss the case after completion of the entire trial process.[8] The judgment in this case does not adversely affect the interests of other persons who may have been damaged by the death of Martin Beltran or preclude them from seeking relief.

It is also contended that the award of $55,000 for damages for conscious pain and mental anguish suffered by plaintiffs' intestate before his death should be set aside as excessive.[9] The

evidence shows that the deceased lived less than three hours after his accident and was unconscious during most of that time. Testimony that he was groaning immediately after his fall and on the way to the hospital may be evidence of pain and suffering. There is no other evidence of his pain and suffering. Although the doctor who performed the autopsy testified that deceased's groaning was an external expression of his internal pain, he also stated that "a person even groaning may have lost his feeling of pain and not be in pain, with that type of extensive injuries."

The damages awarded must be reasonable. The excessiveness of a jury verdict is primarily a matter for the trial court and for that reason we are reluctant to overturn jury verdicts on that ground. However, in view of the very short interval of time the deceased remained conscious after the accident and the lack of positive evidence as to the extent and duration of his conscious pain and suffering said award of $55,000 seems to us to be so clearly excessive and so unreasonable as to require a remand of the case for a new trial on that issue.

We now turn to the additional questions raised in the third party suit. Third party defendants contend that the judgment in favor of the shipowner should be set aside because it was established that the defect in the hatch boards existed prior to the commencement of the stevedoring operations, and that the shipowner knew of this dangerous condition before entering port. The mere fact that a defect existed on the ship does not preclude the shipowner from being indemnified by the stevedoring company where it is found that the primary cause of the accident was the negligence of the stevedoring company. Unseaworthiness and negligence have been held not to operate as a bar to recovery

7. See n. 5, supra.

8. See 2 Barron and Holtzoff, Federal Practice and Procedure, § 516 (1961); Developments in the Law—Multiparty Litigation in the Federal Courts, 1958, 71 Harv.L.Rev. 874, 885–886; Reed, Compulsory Joinder of Parties in a Civil Action 55 Mich.L.Rev. 327, 529–537.

9. On the question of damages, appellants do not claim that the awards of $10,000 to each of the four plaintiffs are excessive.

against the stevedoring contractor. Crumady v. The Joachim Hendrik Fisser, supra.

■ In the instant case the longshoremen had been working all day in the area where the decedent's accident occurred and at the beginning of their stevedoring operations had removed the same hatch boards which were later involved in the accident. There was evidence that before the accident occurred the stevedoring contractor was aware of the defect in the hatch board which sent the plaintiffs' intestate to his death. Under such circumstances, the stevedoring contractor was under an obligation to correct the dangerous condition or suspend its operations. Its failure to do so amounted to a breach of its warranty of workmanlike service owing to the vessel. Consequently, the jury was warranted in ordering the third party defendants to indemnify the shipowner. See Crumady v. The Joachim Hendrik Fisser, supra; Misurella v. Isthmian Lines, Inc., 328 F.2d 40 (2d Cir. 1964).

■ We find no merit in third party defendants' contention that the court erred in refusing to instruct the jury that they could compare the negligence of the vessel with the negligence of the stevedoring contractor and apportion the liability between them based on degree of fault.[10] The court was correct in denying this request. The third party complaint did not set forth a claim for contribution from a joint tortfeasor.[11] It merely asserted a claim for indemnity against third party defendants based on the contractual obligations between the parties.

■ The evidence supports the jury's findings that the stevedoring contractor's negligence was the proximate cause of the accident. Such negligence amounted to a breach of the warranty of workmanlike service owing to the vessel, and the shipowner is entitled to indemnity from the stevedoring company and its insurer. Crumady v. The Joachim Hendrik Fisser, supra; Ryan Stevedoring Co. v. Pan-Atlantic S.S. Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956).

All other points raised have been considered and have been found to be without merit.

Judgment will be entered affirming the judgment of the district court with the exception of the award of $55,000 for the sufferings of the deceased, and vacating that portion of said judgment concerning this excepted award, setting aside the verdict to that extent only, and remanding the case for further proceedings not inconsistent with this opinion.

---

**10.** Third party defendants requested the following charge:

"If the jury finds that the stevedoring workers observed or should have observed any defect in the hatchboards, but the jury also finds that the ship had previous knowledge of that defect and did not inform the stevedoring gang of that fact, then you can find that there was negligence both on the part of the ship and on the part of

third party defendant, and fix liability between them, according to the degree of fault of each of them."

**11.** Such a claim for contribution for joint negligence would not have been permitted. See Pope & Talbot, Inc. v. Hawn, 346 U.S. 406, 408, 74 S.Ct. 202, 98 L.Ed. 143 (1953); Halcyon Lines v. Haenn Ship Ceiling & Refitting Corp., 342 U.S. 282, 72 S.Ct. 277, 96 L.Ed. 318 (1952).