Eleanor FREEMAN, Administratrix of
the Estate of Riley Freeman,
Deceased, Plaintiff,

v.

GIACOMO COSTA FU ANDREA,
Defendant and Third-Party
Plaintiff,

v.

UNIVERSAL TERMINAL & STEVEDOR-
ING CORP., Third-Party Defendant.

Civ. A. No. 37674.

United States District Court
E. D. Pennsylvania.

April 5, 1968.

S. Gerald Litvin, Philadelphia, Pa., for plaintiff.

Harrison G. Kildare, Philadelphia, Pa., for defendant.

## OPINION

FULLAM, District Judge.

Defendant's motion for summary judgment raises novel and perplexing procedural issues. The underlying facts are undisputed:

On Saturday morning, March 13, 1965, Riley Freeman was gravely injured in a waterfront accident. At 10:47 a. m. he was brought to the hospital, unconscious and in critical condition. His wife, Eleanor Freeman, was made aware of the seriousness of the situation and promptly consulted counsel. She arrived at the offices of her attorneys at about 11:30 a. m. Counsel immediately prepared a complaint, claiming damages for Mr. Freeman's injuries, and telephoned a deputy clerk of this Court, at his home, explaining that an emergency had arisen and that it was imperative that suit be

instituted at once. The latter official agreed to proceed forthwith to the courthouse in order to open the clerk's office to receive the complaint.

Counsel's representative arrived at the courthouse with the complaint at 12:15 p. m. The deputy clerk arrived at about 12:45 or 12:50 p. m. The two men then proceeded to the 'clerk's office, where the complaint was time-stamped and docketed, at 1:00 p. m. The plaintiff named in the complaint was Riley Freeman. However, in the meantime, at 12:20 p. m., Mr. Freeman died.

The complaint was duly served and an appearance entered by counsel for the defendant. The next procedural event of present significance occurred on August 3, 1967, when counsel for the defendant filed a "suggestion of death", making Mr. Freeman's death a matter of record. On August 23, 1967, plaintiff's counsel obtained court approval for the substitution of Eleanor Freeman, as administratrix of the estate of her late husband, as party-plaintiff. It is to be noted that this substitution occurred more than two years after the accident and ensuing death.

A wrongful death action under the Pennsylvania statute [1] (Pa.Stat.Ann. tit. 12, § 1601) must be brought within one year after the death (Pa.Stat.Ann. tit. 12, § 1603). A survival action (Pa. Stat.Ann. tit. 20, § 320.603), like other claims for personal injuries, must be brought within two years (Pa.Stat.Ann. tit. 12, § 34 and tit. 12, § 1603).

■ At common law, all causes of action abated at death, Johnson v. Peoples First Nat. Bk. & Tr. Co., 394 Pa. 116, 123, 145 A.2d 716 (1958). And the amendment of the caption and "substitution" of parties permitted in August of 1967 could not retroactively validate the proceedings, if there was no pending action to be amended. Thompson v. Peck, 320 Pa. 27, 30, 181 A. 597 (1935).

■ Thus the present motion makes it necessary to decide whether or not this action was commenced on behalf of the decedent during his lifetime. This is a question to be decided according to federal law. Hanna v. Plumer, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965); Mahan v. Ohio Auto Rentals Co., 207 F.Supp. 383 (D.C.Ohio, 1962).

"A civil action is commenced by filing a complaint with the court." Fed.R. Civ.P. 3. This means "filing [it] with the clerk of court, except that the judge may permit the papers to be filed with him, in which event he shall note thereon the filing date and forthwith transmit them to the office of the clerk." Fed. R.Civ.P. 5(e).

Fed.R.Civ.P. 77(a) provides that "The district courts shall be deemed always open for the purpose of filing any pleading or other proper paper * * *." [2] There is no local rule in this district establishing Saturday office hours for the clerk's office; as provided in Rule 77(c), the office is normally closed on Saturdays.

The question of how pleadings can be filed when the clerk's office is closed does not often arise, largely because of the well-nigh universally established methods of computing time for limitations and related purposes, whereby a filing due on Saturday is regarded as timely if accomplished on Monday following. See, e. g., Rule 6(a) Fed.R. Civ.P.; Pa.Stat.Ann. tit. 46, §§ 538–540; Jones & Laughlin Steel Corp. v. Gridiron Steel Co., 382 U.S. 32, 86 S.Ct. 152, 15 L.Ed.2d 26 (1965); Rupe v. State Public School Building Authority, 245 F.Supp. 726 (W.D.Pa.1965).

---

1. The State statutes are "adopted" to supplement the general maritime law in this situation. Levinson v. Deupree, 345 U.S. 648, 652, 73 S.Ct. 914, 97 L.Ed. 1319 (1953); The Tungus v. Skovgaard, 358 U.S. 588, 79 S.Ct. 503, 3 L.Ed. 524 (1958).

2. See also 28 U.S.C. § 452. The court's power to act is continuous; of course, in view of the specific reference to the filing of pleadings, and the duties of the Clerk in that regard (Rules 3, 77(c), 79), it is clear that the Clerk's power to act is likewise continuous.

This principle of time-computation sheds no light on the present problem, however. To provide for flexibility in computing the expiration of a specified period of time measured from a known reference-point is one thing; to pretend to lengthen a man's life is quite another. The fixed reference-point in our case is at the end of the time period, not the beginning. Mr. Freeman's capacity to commence a law-suit, or to authorize, expressly or by implication, his wife to do so for him, ended at 12:20 p. m. on Saturday, March 13, 1965. The issue here is, as previously stated, had this action been "commenced" by that time?

■ It is self-evident that the court could not be deemed "always open" for the filing of pleadings (Rule 77(a)) unless it were possible to file papers while the clerk's office is physically closed. Accordingly, it is settled law that delivery of a pleading to a proper official is sufficient to constitute filing thereof. United States v. Lombardo, 241 U.S. 73, 36 S.Ct. 508, 60 L.Ed. 897 (1916); Milton v. United States, 105 F.2d 253, 255 (5th Cir. 1939). In Greeson v. Sherman, 265 F.Supp. 340 (D.C.Va.1967) it was held that a pleading delivered to a deputy clerk at his home at night was thereby "filed."

■ But it is also reasonably clear that after-hours delivery to the clerk's office can constitute "filing", even though no one is present to receive, or learn about, the papers in question. In Hetman v. Fruit Growers Express Co., 200 F.Supp. 234 (D.N.J.1961), a complaint mailed at 5:00 p. m. on the last day, which reached the court's mailbox before midnight, was held timely filed. In Johnson v. Esso Standard Oil Co., 181 F.Supp. 431 (W.D.Pa.1960) the same result was reached where the complaint was delivered to the clerk's post-office box before midnight on the final day. See also Johansson v. Towson, 177 F. Supp. 729 (M.D.Ga.1959). In Central Paper Co. v. Commissioner of Internal Rev., 199 F.2d 902, 904 (6th Cir. 1952), it was held that a complaint was deemed filed when placed on a ledge near the mail receptacle of the court (the mailbox was too small).

Perhaps the closest factual analogy to the present case was presented in Owens-Illinois Glass Co. v. District of Columbia, 92 U.S.App.D.C. 15, 204 F.2d 29 (1953). In that case, a petition for review was filed with the Board of Tax Appeals shortly before the office closed on the last day of the appeal period. Thereafter, a representative of the opposing side sought to file a cross-appeal after the office was closed. He contacted a Board member by telephone and, with his consent, slipped the cross-petition under the door of the Board's office, about one hour after closing-time. The document was found that night by a charwoman. Initially, the cross-petition was stamped "filed" as of the following morning (June 1), but this notation was later changed, on petition, to the previous day (May 31). The Court of Appeals held that the cross-petition was timely filed.

The foregoing authorities permit the conclusion that if plaintiff's messenger had deposited the complaint in the clerk's mail-slot or slipped it under the door of the clerk's office, as soon as he arrived at the courthouse, the action would have been "commenced" during decedent's lifetime. Similarly, if he had delivered the complaint to the deputy clerk, or to a member of this Court, before 12:20 p. m., it is clear the filing would have been timely, even though the formal stamping and docketing did not occur until later. What plaintiff's representative actually did has some of the attributes of each of these alternatives but does not fully square with either; and the question is whether he "fell between the two stools."

■ I recognize that a law-suit must be more than a gleam in the eye of counsel before it can be regarded as validly pending. At some point, procedural informality merges into and becomes a defect in substance. But under all of the circumstances of this case, I have concluded that the action was "commenced",

within the meaning of Rule 3, during Mr. Freeman's lifetime.

The plaintiff's wife had authority to act for him under the emergency conditions then prevailing. Her intention to file suit was clearly manifested. The complaint was prepared and fully executed. Both she and her counsel proceeded with amazing dispatch, and did all that could reasonably be expected to lodge the papers with the clerk for filing. A proper official was informed by telephone. The complaint was delivered to the courthouse. All of this occurred before the plaintiff died. In light of the "always open" language of the statute and Rule 77(a), I believe it would violate the spirit of the rules and the intent of Congress to hold that the fact that the messenger waited in the corridor for the deputy clerk to arrive, instead of slipping the papers under the door, deprived the plaintiff of his day in court.

This is undoubtedly a borderline case, and the result expressed above stretches the definition of "filing" to perhaps the utmost limits consistent with basic procedural requirements. The fact that both sides, for more than four years, proceeded on the assumption that the complaint was duly filed and the action validly pending, is a factor which makes it less difficult for me to adopt this expanded definition. The defendant is not prejudiced in any real sense, but merely deprived of a recently-discovered possible technical defense.[3]

One further aspect of the case requires mention. It would perhaps have been possible to conclude that the defendant's acquiescence estops the defense from asserting the statute of limitations, and that the administratrix should therefore be permitted to maintain her action, as one duly instituted after the decedent's death, with the measure of damages

changed accordingly.[4] Another view might be that whereas Mrs. Freeman thought she was acting as agent for her husband in starting suit, she was really, after 12:20 p. m., acting on behalf of his estate and in her own right; and the grant of letters of administration to her in 1967 merely converted a *de facto* status into a *de jure* status. Both of these approaches would require one to ignore the nature of the claim asserted in the complaint, and the parties named therein. More significantly, both approaches are based in part upon the fortuitous circumstance that the widow, rather than someone else, was appointed administratrix. I have therefore rejected both these approaches.

For the foregoing reasons, I have concluded that the complaint in this action should be deemed to have been filed as of 12:15 p. m. on March 13, 1965, and that the defendant's motion for summary judgment should be denied.

---

3. Fed.R.Civ.P. 1 requires application of the procedural rules "to secure the *just*, speedy, and inexpensive determination of every action" (emphasis added). Technicalities are no longer accorded primary importance. Schaedler v. Reading Eagle Publication, Inc., 370 F.2d 795, 798 (3d Cir. 1967).

4. Cf. Radobersky v. Imperial Volunteer Fire Dept., 368 Pa. 235, 81 A.2d 865 (1951); Murray v. Philadelphia Transportation Company, 359 Pa. 69, 73–74, 58 A.2d 323 (1948).