Henry C. Lucas, III, Philadelphia, Pa., for plaintiff.

James B. Doak, Gerald Gorman, Philadelphia, Pa., for defendant.

Carol **BANCHI**, Administratrix of the Estate of **John D. Banchi, Jr.**, Dec'd.

and

**Dorothy Lawnicki**, as Administratrix Ad Prosequendum of the Estate of **Matthew S. Lawnicki**, Dec'd and as Administratrix of the Estate of **Matthew S. Lawnicki**, Dec'd.

v.

**Robert D. MILLER.**

Civ. A. No. 74–788.

United States District Court,
E. D. Pennsylvania.

July 12, 1974.

## MEMORANDUM OPINION

WEINER, District Judge.

Plaintiffs, the administratrices of the estates of their deceased husbands who were drowned in Great Bay, part of the territorial waters of the state of New Jersey and navigable waters of the United States, have filed this admiralty action to recover damages for their husband's alleged wrongful deaths. They contend that on April 2, 1973 their late husbands were invited by the defendant to go fishing in the defendant's outboard motor boat, a self propelled vessel about 17 feet in length. While the fiberglass pleasure boat was being operated in navigable waters, it was allegedly caused to overturn and sink by reason of defendant's negligence and the unseaworthy condition of said boat resulting in the deaths of plaintiffs' husbands. Defendant has now filed a motion to dismiss challenging the admiralty jurisdiction of this Court to entertain this matter.

The thrust of the defendant's motion is that the situs of a casualty in navigable waters, alone, is not sufficient to establish admiralty jurisdiction, but according to Executive Jet Aviation, Inc. v. City of Cleveland, 409 U.S. 249, 93 S. Ct. 493, 34 L.Ed.2d 454 (1972), there must also be a substantial relationship to traditional maritime activity.

In *Executive Jet*, the United States Supreme Court was presented with a factual situation where, because of the defendants' alleged negligence, a jet aircraft, while taking off from a Cleveland airport struck and ingested a flock of seagulls causing the aircraft to lose power and crash into Lake Erie. The land based aircraft which was on a flight between two points in the continental United States ultimately sank in the navigable waters of Lake Erie. The plaintiffs contended that situs of the crash invested the court with admiralty jurisdiction pursuant to 28 U.S.C. §

1333. The Supreme Court in holding to the contrary traced the history of the locality doctrine and indicated that:

"This locality test, of course, was established and grew up in an era when it was difficult to conceive of a tortious occurrence on navigable waters other than in connection with a waterborne vessel. Indeed, for the traditional types of maritime torts, the traditional test has worked quite satisfactorily. As a leading admiralty text has put the matter:

'It should be stressed that the important cases in admiralty are not the borderline cases on jurisdiction; these may exercise a perverse fascination in the occasion they afford for elaborate casuistry, but the main business of the [admiralty] court involves claims for cargo damage, collision, seamen's injuries and the like—all well and comfortably within the circle, and far from the penumbra.' G. Gilmore & C. Black, The Law of Admiralty 24 n. 88 (1957).

But it is the perverse and casuistic borderline situations that have demonstrated some of the problems with the locality test of maritime tort jurisdiction."

409 U.S. at 254–255, 93 S.Ct. at 497.

To remedy these borderline situations which had been plaguing courts, the Supreme Court in *Executive Jet* ruled that in addition to the locality test the law also required that the "wrong bear .a significant relationship to traditional maritime activity" for the tort to be one cognizable in admiralty. Id. at 268, 93 S.Ct. at 504.

■ The defendant in the instant case asserts that since his waterborne vessel was engaged in a pleasure fishing trip for recreational purposes and not in furtherance of maritime commerce, the incident giving rise to the plaintiffs' suit bears no significant relationship to traditional maritime activity under the *Executive Jet* doctrine. We disagree. Only a convoluted reading of the *Executive Jet* case would require such a holding. The plaintiff has alleged facts in the instant case which give rise to the traditional type of maritime tort that courts of admiralty have always considered within their province.[1] Here we have a traditional waterborne vessel whose allegedly negligent use, navigation and/or operation in the navigational waters of the United States caused it to capsize resulting in the drowning of two of its passengers. Merely because the defendant's vessel was not engaged in maritime commerce is not controlling since we are still concerned with navigational rules and concepts indigenous to travel on the waterways of the world. Whether we apply the mechanical locality test or the locality plus test, the results would be identical and would invest this Court with admiralty jurisdiction over the present litigation.

■ The defendant further contends that the instant action should be dismissed because one plaintiff has filed a diversity action in this court (Civil Action No. 74–789) and the other plaintiff has filed an action in trespass in the Court of Common Pleas of Bucks County, Pennsylvania (No. 74–2839). These suits seek the same money damages as the instant case and are premised upon the identical facts and circumstances. We fail to see how the filing of these protective suits provides any basis for the dismissal of the instant admiralty claim at this juncture. If the defendant is suggesting a defense of res judicata, it is certainly not yet ripe.

[1.] Prior to *Executive Jet* many courts recognized that torts arising out of the use, navigation and/or operation of pleasure vessels on the navigable waters of the United States fell within the purview of federal admiralty jurisdiction. *See*, Levinson v. Deupree, 345 U.S. 648, 73 S.Ct. 914, 97 L.Ed. 1319 (1953); Coryell v. Phipps, 317 U.S. 406, 63 S.Ct. 291, 87 L.Ed. 363 (1943); Branch v. Schumann, 445 F.2d 175 (5th Cir. 1971); Rowe v. Brooks, 329 F.2d 35 (4th Cir. 1964). The *Executive Jet* decision does not appear to have altered this view. *See*, Oppen v. Aetna Insurance Company, 485 F.2d 252 (9th Cir. 1973); Kelly v. Smith, 485 F. 2d 520 (5th Cir. 1973); Luna v. Star of India, 356 F.Supp. 59 (S.D.Cal.1973).