substitution of the real party in interest, in my opinion, would have been "merely formal" in the present case, and would not have "alter[ed] the original complaint's factual allegations as to the events or participants." In light of the lack of prejudice to Logitrans, the inadvertence of Zurich Insurance's mistake, and the relationship between Zurich Insurance and American Guarantee as sister corporations under common ownership, I would have been inclined to conclude that substitution was appropriate under Rule 17(a) in the present case. The court's holding that Zurich Insurance lacked Article III standing, however, precludes consideration of the Rule 17(a) issue.

Second, I note that Zurich Insurance argues on appeal that Logitrans waived its ability to object to the failure to bring the case in the name of the real party in interest by waiting until only twenty days before trial, and after the deadline for dispositive motions had passed, before raising the issue. Although it appears to me that this argument has merit, our holding on the grounds of Article III standing means that the waiver issue, like the Rule 17(a) issue, is beyond the scope of our power to adjudicate.

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0253P (6th Cir.)
File Name: 02a0253p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————

ZURICH INSURANCE
COMPANY, a Swiss
Corporation, a subrogee of
Lear Corporation, a Delaware
Corporation,
     *Plaintiff-Appellant,*

AMERICAN GUARANTEE &
LIABILITY INSURANCE
COMPANY,
     *Movant-Appellant,*

     *v.*

LOGITRANS, INCORPORATED,
et al.,
     *Defendants-Appellees.*

No. 01-1018

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
Nos. 98-72877; 98-75612—Robert H. Cleland,
District Judge.

Argued: April 30, 2002

Decided and Filed: July 29, 2002

Before:  SUHRHEINRICH and GILMAN, Circuit Judges;
HOOD, District Judge.[*]

———————————

### COUNSEL

**ARGUED:**   Ann C. Chalstrom, CLAUSEN, MILLER, GORMAN, CAFFREY & WITOUS, Chicago, Illinois, for Appellants.   Michael J. Black, BUESSER, BLACK, GRAHAM & BUETTNER, Bloomfield Hills, Michigan, Donald R. Dillon, Jr., MOFFETT & DILLON, Birmingham, Michigan, for Appellees.  **ON BRIEF:**  Edward M. Kay, CLAUSEN, MILLER, GORMAN, CAFFREY & WITOUS, Chicago, Illinois, Paul D. Galea, FOSTER, MEADOWS & BALLARD, Detroit, Michigan, for Appellants.  Michael J. Black, Neil K. Disney, BUESSER, BLACK, GRAHAM & BUETTNER, Bloomfield Hills, Michigan, Donald R. Dillon, Jr., MOFFETT & DILLON, Birmingham, Michigan, for Appellees.

HOOD, D. J., delivered the opinion of the court, in which SUHRHEINRICH, J., joined.  GILMAN, J. (pp. 9-12), delivered a separate concurring opinion.

———————————

### OPINION

———————————

JOSEPH M. HOOD, District Judge.  In this negligence action, Plaintiff Zurich Insurance Company ("Zurich Switzerland") and Movant American Guaranty & Liability Insurance Company ("American Guaranty") appeal the district court's orders denying Zurich Switzerland's motion to substitute American Guarantee as the real party in interest, and denying Zurich Switzerland's and American Guarantee's

---

[*]  The Honorable Joseph M. Hood, United States District Judge for the Eastern District of Kentucky, sitting by designation.

as set forth in the advisory committee notes, permits the inference that substitution of the real party in interest under Rule 17(a) cannot be used to save a suit brought in the name of a party that has suffered no injury whatsoever.  The lead opinion, however, quotes the entire advisory committee note in making this point—importing, in the process, concepts of good faith and "understandable mistake" that have no bearing on the Article III standing analysis.  Given the difference between the Article III issues and the Rule 17 issues, which are properly distinguished in the latter paragraphs of the lead opinion, I would caution against the suggestion that American Guarantee's alleged lack of vigilance affected the court's Article III standing analysis.  (Op. p. 7)

Although the question of American Guarantee's vigilance in protecting its interests is not relevant to the court's Article III analysis, this factor would have been relevant in determining whether a substitution of the real party in interest is appropriate under Rule 17(a).  A plaintiff's vigilance, however, is not the only consideration under Rule 17(a).  In particular, a lack of prejudice to the opposing party should also be taken into account in considering a Rule 17(a) motion, because the Rule is "intended to insure against forfeiture and injustice."  Fed. R. Civ. P. 17 advisory committee's note.  With respect to Rule 17(a), the Second Circuit has stated:

> Although the district court retains some discretion to dismiss an action where there was no semblance of any reasonable basis for the naming of an incorrect party, there plainly should be no dismissal where 'substitution of the real party in interest is necessary to avoid injustice' . . . .  A Rule 17(a) substitution of plaintiffs should be liberally allowed when the change is merely formal and in no way alters the original complaint's factual allegations as to the events or the participants.

*Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 20 (2d Cir. 1997) (quoting 6A Charles A. Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure § 1555, at 415 (2d Ed. 1990) (citations omitted)).  A

American Guarantee money, the parent entities suffered a financial injury in fact because those losses diminished the value of their investment in American Guarantee. *Franchise Tax Bd. of Cal. v. Alcan Aluminum Ltd.*, 493 U.S. 331, 336 (1990) (holding that two foreign parent companies of U.S. subsidiaries had Article III standing to challenge U.S. tax laws affecting the subsidiaries, because "[i]f those taxes are higher than the law of the land allows, that method threatens to cause actual financial injury to [the parent companies] by illegally reducing the return on their investments in [the American subsidiaries] and by lowering the value of their stockholdings.").

The present case, however, was brought in the name of Zurich Insurance, which is, like American Guarantee, owned by ZAIC. American Guarantee is therefore not an asset of Zurich Insurance, but a parallel entity in the corporate hierarchy of ZFSG. As sister companies that are only connected with one another by the common owner they share, a financial injury to American Guarantee would have little to no effect on Zurich Insurance. As a result, Zurich Insurance has not been shown to have suffered any injury from American Guarantee's losses on the Lear policy. I therefore agree with the court's conclusion that Zurich Insurance lacked Article III standing to move for a substitution of the real party in interest under Rule 17(a). Without Article III standing, the district court lacked subject matter jurisdiction over the entire case. Where jurisdiction does not exist, "the only function remaining to the court is that of announcing the fact and dismissing the cause." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (internal quotation marks and citation omitted).

There are two further matters that I believe warrant clarification. First, I think that the lead opinion's use of the advisory committee notes to Rule 17 potentially confuses the standards for deciding the separate issues of (1) Article III standing, and (2) the availability of substitution under Rule 17(a) once Article III standing is established. (Op. p. 6-7) I agree with the lead opinion that the example of the air crash,

emergency motion for rehearing and reconsideration, and subsequent dismissal of the case. Whereas the district court did not abuse its discretion in denying these motions, we **AFFIRM** the district court's decision**.**

## FACTS

This lawsuit stems from a warehouse fire that occurred on August 27, 1997. Defendant American Commodities, Inc. ("ACI") leased the warehouse located at 2945 Davidson Road, Flint, Michigan and subleased a portion of the warehouse to Defendant Logitrans, Inc. ("Logitrans"). Logitrans subsequently provided services for Lear Corporation ("Lear") in connection with Lear's manufacture of automobile seats. The fire destroyed significant property owned by Lear and Lear Seating (Thailand) Corporation, Ltd. ("Lear Thailand"). The allegations against the defendants are based on negligence and failure to exercise due care in keeping the property safe.

Lear and Lear Thailand were insured by American Guarantee who paid Lear's claims for damages.[1] Consequently, American Guarantee became Lear's subrogee regarding any claims Lear had against the defendants arising from the fire. In spite of its legal entitlement, American Guarantee was not named a party to the initial complaint filed on November 6, 1998. Instead, Zurich Switzerland brought the action as Lear's purported subrogee, notwithstanding that Zurich Switzerland never issued an insurance policy nor paid out any money to Lear. Twenty days before trial, Defendant Logitrans filed a motion *in limine*, in which it first asserted that Zurich Switzerland was not Lear's true subrogee, and argued that Zurich Switzerland should be barred from offering evidence at trial and barred from addressing the jury.

---

[1]Lear partially owned Lear Thailand, and the American Guarantee policy issued to Lear covered Lear Thailand as an additional insured party. Although distinct corporations, any reference to Lear in this opinion will refer to both corporations unless otherwise noted.

Zurich Switzerland did not dispute that it was not the proper plaintiff, and responded by filing a motion to substitute American Guarantee as the real party in interest pursuant to Fed. R. Civ. P. 17(a). Subsequently, Defendant ACI moved to dismiss the action pursuant to Fed. R. Civ. P. 12(b)(6), and Defendant Logitrans joined in that motion. The district court denied the motion to substitute on the grounds that Zurich Switzerland failed to show that the prosecution of the case in Zurich Switzerland's name as opposed to American Guarantee's name was an understandable mistake. Since Zurich Switzerland was not a proper plaintiff, the district court dismissed its claims pursuant to Rule 12(b)(6). Inasmuch as the statute of limitations had run on American Guarantee's claims, the denial of the motion to substitute prevented American Guarantee from pursuing its claims against the defendants.

In response, Zurich Switzerland filed an emergency motion for rehearing and reconsideration based on newly found factual information. The district court denied the motion on the grounds that the "new information" did not reveal a palpable defect in the court's ruling. Zurich Switzerland and American Guarantee ("Appellants") now appeal these decisions.

## DISCUSSION

Appellants argue that the district court abused its discretion in denying Zurich Switzerland's motion to substitute the real party in interest under Fed. R. Civ. P. 17(a). Furthermore, they contend that the defendants waived their right to bring a real party in interest objection inasmuch as the objection was filed in the form of a motion *in limine* just twenty days before trial. Although this case has been litigated under Rule 17(a), it is not a "true" real party in interest question, but instead is an Article III standing issue.

"In order for a federal court to exercise jurisdiction over a matter, the party seeking relief must have standing to sue. Standing has both constitutional and prudential dimensions. The constitutional requirements for standing emanate from

————————

## CONCURRENCE

————————

RONALD LEE GILMAN, Circuit Judge, concurring. Because Zurich Insurance Company did not suffer an injury in fact as a result of Logitrans's alleged actions, I agree that the district court lacked jurisdiction to consider the motion of Zurich Insurance to substitute the real party in interest. The root problem is Zurich Insurance's lack of Article III standing. I write separately, however, because the lead opinion's ambiguity about the relationship between Zurich Insurance and American Guarantee might lead to confusion in future cases involving complex corporate structures.

The lead opinion concludes that Zurich Insurance suffered no injury in fact because it is "a totally separate entity" from American Guarantee. (Op. p. 7) Although this statement is technically correct, a reader unfamiliar with the record might easily infer this to mean that the two entities are unrelated. Such is clearly not the case. Instead, Zurich Insurance and American Guarantee are sister companies under the common ownership of a single corporate entity—Zurich American Insurance Corporation (ZAIC). ZAIC is in turn a subsidiary of Zurich American Insurance Group (ZAIG), which is itself a subsidiary of Zurich Financial Services Corporation (ZFSC) based in Switzerland. Lear's insurance policy displays some of these relationships. The policy is written on a ZAIG form, with the Zurich logo prominently displayed at the top-left of the page. Open boxes appear beside the words "Zurich Insurance Company" and "American Guarantee and Liability Insurance Company," with an "x" marked in the box for American Guarantee.

In my opinion, any or all of American Guarantee's direct or indirect owners—ZAIC, ZAIG, or ZFSG—would have had constitutional standing to bring suit against Logitrans, even though none of these parent entities is the real party in interest. The value of American Guarantee depends upon its financial well-being. To the extent that Lear's losses cost

1974)("There is not doubt that as to the trust fund, the trustees are the real party in interest by virtue of Fed. R. Civ. P. 17(a). But Rule 17(a) means only that the trustees have a real interest in the trust fund. Rule 17(a) does not give them standing; 'real party in interest' is very different from standing.").

Accordingly, we **AFFIRM** the district court's decision.

Art. III, § 2, of the U.S. Constitution, which grants federal courts jurisdiction over 'cases' and 'controversies.'" *Kardules v. City of Columbus*, 95 F.3d 1335, 1346 (6th Cir. 1996). To establish Article III standing, a plaintiff must, at a minimum, establish the following elements:

> First, the plaintiff must have suffered an "injury in fact" –an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'" Second, there must be a causal connection between the injury and the conduct complained or – the injury has to be "fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be redressed by a favorable decision."

*Id*. (*quoting Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-1 (1992)). Article III standing is a jurisdictional requirement that cannot be waived, and such may be brought up at any time in the proceeding. Fed. R. Civ. P. 12(h)(3). Whereas Zurich American admittedly has not suffered injury in fact by the defendants, it had no standing to bring this action and no standing to make a motion to substitute the real party in interest. Accordingly, the district court's denial of Appellants' Rule 17(a) motion to substitute and the subsequent dismissal of the action must be affirmed.

The Federal Rules of Civil Procedure cannot expand the subject matter jurisdiction of federal courts beyond the limits of U.S. Constitution. 28 U.S.C. § 2072(b). Appellants rely upon the provision of Rule 17(a) which states that:

> No action shall be dismissed on the grounds that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same

effect as if the action had been commenced in the name of the real party in interest.

Fed. R. Civ. P. 17(a). However, this provision must be read with the limitation that a federal district court must, at a minimum arguably have subject matter jurisdiction over the original claims. Such an interpretation is supported by the advisory committee notes to Rule 17(a):

The provision that no action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed, after the objection has been raised, for ratification, substitution, etc., is added simply in the interests of justice. In its origin the rule concerning the real party in interest was permissive in purpose: it was designed to allow an assignee to sue in his own name. That having been accomplished, the modern function of the rule in its negative aspect is simply to protect the defendant against the a subsequent action by the party actually entitled to recover, and to insure generally that the judgment will have its proper effect as re judicata.

This provision keeps pace with the law as it is actually developing. Modern decisions are inclined to be lenient when an honest mistake has been made in choosing the party in whose name the action is to be filed—both in maritime and nonmaritime cases. See *Levison v. Deupree*, 345 U.S. 648 (1953); *Link Aviation, Inc. v. Downs*, 325 F.2d 613 (D.C.Cir. 1963). This provision should not be misunderstood or distorted. It is intended to prevent forfeiture when determination of the proper party to sue is difficult or when an understandable mistake has been made. It does not mean, for example, that following an airplane crash in which all aboard were killed, an action may be filed in the name of John Doe (a fictitious person), as personal representative of Richard Roe (another fictitious person), in the hope that at a later time the attorney filing the action may substitute the real name of the real personal representative of a real victim, and have the benefit of suspension of the limitation

period. *It does not even mean, when an action is filed by the personal representative of John Smith, of Buffalo, in the good faith belief that he was aboard the fight, that upon discovery that Smith is alive and well, having missed the fatal flight, the representative of James Brown, of San Francisco, an actual victim, can be substituted to take advantage of the suspension of the limitations period.*

Fed. R. Civ. P. 17 advisory committee's notes (*emphasis added*).

The facts of this case are analogous to the last example illustrated by the advisory committee. An attorney made a mistake and filed the action in the name of Zurich Switzerland, when Zurich Switzerland had no claims whatsoever against the defendants, and no Article III standing to sue. American Guarantee, a totally separate entity, which was not vigilant in protecting its claims, cannot now benefit from Zurich Switzerland's mistake so as to take advantage of the suspension of the limitations period.

Several other circuit courts have acknowledged that there is a distinction between questions of Article III standing and Rule 17(a) real party in interest objections. The Fifth Circuit in *Ensely v. Cody Resources, Inc.*, 171 F.3d 315 (5th Cir. 1999), determined that a shareholder in a closely held corporation had Article III standing to sue on claims of *quantum meruit*. The Fifth Circuit went on to find that the defendant's objections to the plaintiff's standing were governed by Rule 17(a) real party in interest analysis and were waived because the objection was not made until the trial was underway. *Id*. at 319-20. Likewise, the District of Columbia Circuit acknowledged a distinction between Article III standing and Rule 17(a) in *Whelan v. Abell*, 953 F.2d 663 (1992), when it initially made the determination that the shareholder plaintiff did have standing under Article III, prior to addressing the Rule 17(a) issue. *Id*. at 672. *See also Kent v. Northern California Regional office of the American Friends Service Committee*, 497 F.2d 1325, 1329 (9th Cir.