13‐3325 
Cortlandt St. Recovery Corp. v. Hellas Telecommunications, S.à.r.l. 
 
 UNITED STATES COURT OF APPEALS 
 FOR THE SECOND CIRCUIT 
 August Term, 2013 
 (Argued:  May 8, 2014  Decided:  June 24, 2015) 
 Docket No. 13‐3325 

  
 Cortlandt Street Recovery Corp., 
 Plaintiff‐Appellant, 

 v. 

 Hellas Telecommunications, S.à.r.l., Hellas Telecommunications I, S.à.r.l, Hellas 
Telecommunications Co‐Invest Ltd., Hellas Telecommunications Employees Ltd., 
 TCW HT‐Co‐Invest I L.P., TCW HT‐Co‐Invest II L.P., 
 Defendants–Appellees.* 
  
Before:  JACOBS, SACK, and LYNCH, Circuit Judges. 
 The plaintiff appeals from an August 2, 2013, order of the United States 

District Court for the Southern District of New York (J. Paul Oetken, Judge) 

dismissing the plaintiffʹs claims without prejudice.  We conclude that the district 

court correctly decided that the plaintiff lacked Article III standing to bring the 

claims at issue.  We further conclude that the district court did not err in denying 

the plaintiffʹs request to attempt to cure this standing defect under Fed. R. Civ. P. 

17(a)(3).  The judgment of the district court is therefore:  

 AFFIRMED. 

 The Clerk of Court is respectfully directed to amend the official caption in this case to conform 
*  

with the caption above. 
 No. 13‐3325 
 Cortlandt St. Recovery Corp. v. Hellas Telecommunications, S.à.r.l. 
 
 Judge Sack also files a separate concurring opinion. 

 JARED B. STAMELL, Stamell & Schager, 
 LLP, New York, NY (Andrew R. 
 Goldenberg, Stamell & Schager, LLP, New 
 York, NY, on the brief), for Plaintiff–
 Appellant. 
 ROBERT S. FISCHLER, Ropes & Gray LLP, 
 New York, NY (Evan P. Lestelle, Ropes & 
 Gray LLP, New York, NY, Paul M. 
 OʹConnor III, David J. Abrams, Kasowitz, 
 Benson, Torres & Friedman LLP, New 
 York, NY, on the brief), for Defendants–
 Appellees Hellas Telecommunications Co‐
 Invest Ltd., Hellas Telecommunications 
 Employees Ltd., TCW HT‐Co‐Invest I L.P., and 
 TCW HT‐Co‐Invest II, L.P. 
 DWIGHT A. HEALY, White & Case LLP, 
 New York, NY (Katherine J. Mims, of 
 counsel, White & Case LLP, New York, NY, 
 on the brief), for Defendants–Appellees Hellas 
 Telecommunications, S.à.r.l., and Hellas 
 Telecommunications I, S.à.r.l. 
SACK, Circuit Judge: 
 This is an appeal from a judgment of the United States District Court for 

the Southern District of New York (J. Paul Oetken, Judge) dismissing the 

plaintiffʹs claims without prejudice for lack of standing.  The plaintiff appeals 

from that decision and from the district courtʹs denial of the plaintiffʹs request to 

attempt to cure the standing defect by having the real party in interest ʺratify, 

 2 
 
 No. 13‐3325 
 Cortlandt St. Recovery Corp. v. Hellas Telecommunications, S.à.r.l. 
 
join, or be substituted into the actionʺ pursuant to Fed. R. Civ. P. 17(a)(3).  

Because we agree that the plaintiff lacked standing to pursue its stated claims, 

and because we conclude that the district court did not abuse its discretion in 

declining to allow ratification, joinder, or substitution under Rule 17(a)(3), we 

affirm. 

 BACKGROUND 

 Cortlandt Street Recovery Corp. (ʺCortlandtʺ), a New York corporation, is 

attempting to collect approximately €83.1 million allegedly owed to it under 

defaulted ʺSubordinated Notesʺ (ʺSub Notesʺ) issued in 2006 by a now‐dissolved 

entity, Hellas Telecommunications (Luxembourg) II, S.C.A. (ʺHellas IIʺ).  

Cortlandt alleges that the holders of the Sub Notes, citizens severally of Greece, 

the British Virgin Islands, the Cayman Islands, and Gibraltar assigned Cortlandt 

a portion of the notes in 2011, thereby authorizing Cortlandt to bring the present 

action.1   

                                                            
  The only evidence of assignment that is in the record pertains to a tranche of 
 1

notes unrelated to the Sub Notes.   Cortlandt asserts here, as it did before the district 
court, however, that the language of this assignment is identical to the language of the 
Sub Notes assignment.  We assume that to be true for purposes of this appeal.  The 
relevant portion of the assignment reads: 
 The Noteholder hereby assigns to Cortlandt Street Recovery Corp. . . . full rights 
 to collect amounts of principal and interest due on the Notes, and to pursue all 
 3 
 
 No. 13‐3325 
 Cortlandt St. Recovery Corp. v. Hellas Telecommunications, S.à.r.l. 
 
 Cortlandt contends, in substance, that the private equity firms TPG 

Capital, L.P. (ʺTPGʺ) and Apax Partners, LLP (ʺApaxʺ), which are not parties to 

the present suit, used the Sub Notes to defraud their creditors.  According to 

Cortlandt, TPG and Apax owned a group of related foreign companies including 

Hellas II and defendants Hellas Telecommunications, S.à.r.l. and Hellas 

Telecommunications I, S.à.r.l., also Luxembourg entities (the ʺHellas 

Defendantsʺ).  Cortlandt alleges that TPG and Apax issued promissory notes, in 

the name of one of the Hellas Defendants, pledging TPGʹs and Apaxʹs equity in 

the company and its subsidiaries as collateral.  According to Cortlandt, the firms 

then used the proceeds from this sale to buy their own collateral, rendering the 

Hellas entities insolvent. 

                                                                                                                                                                                                
 remedies with respect to the Notes against Hellas Finance [or related entities] . . . 
 and any other person or entity who may be liable to Noteholder.  The Noteholder 
 remains the owner of the Notes and person in whose name the Notes are 
 registered. 
 The Noteholder hereby irrevocably appoints [Cortlandt] its true and lawful 
 attorney and proxy, with full power of substitution, to pursue collection and all 
 remedies with respect to the Notes . . . .  Under this appointment [Cortlandt] 
 shall have all requisite power and authority . . . to make any request or demand 
 or to take any other action under or with respect to the Notes, or under the 
 December 21, 2006 Indenture under which the Notes were issued. 
J.A. 109‐10. 

 4 
 
 No. 13‐3325 
 Cortlandt St. Recovery Corp. v. Hellas Telecommunications, S.à.r.l. 
 
 Cortlandt argues that this process—termed a ʺbleed‐outʺ—rendered both 

the Hellas Defendants and several now‐dissolved foreign investment funds that 

owned or financed the Hellas entities2 (the ʺSponsor Defendantsʺ) liable to the 

noteholders or their assignees.  In November 2012, Cortlandt, as purported 

assignee of the Sub Notes, filed a complaint against both sets of defendants in the 

United States District Court for the Southern District of New York claiming, inter 

alia, the right to payment under the Sub Notes, breach of contract, violations of 

prohibitions on distributions, fraudulent conveyances, and unjust enrichment.  

Cortlandt requested relief in the form of payment of the amounts owed on the 

Sub Notes, plus interest, and fees, costs, and expenses.   

 Cortlandt also filed several other lawsuits in state and federal court 

seeking to collect on the Sub Notes and on another tranche of notes it claims it 

was assigned, the so‐called ʺPIK Notes,ʺ3 which are not at issue in this case.  See, 

e.g., Cortlandt St. Recovery Corp. v. Aliberti, No. 12 CIV. 8686 JPO, 2014 WL 941900, 

2014 U.S. Dist. LEXIS 32041 (S.D.N.Y. Mar. 11, 2014), on reconsideration,  2014 WL 

                                                            
  These funds are Hellas Telecommunications Co‐Invest Ltd., Hellas 
 2

Telecommunications Employees Ltd., TCW HT‐Co‐Invest I L.P., and TCW HT‐Co‐
Invest II L.P. 
  ʺPIKʺ is an acronym for ʺpayment‐in‐kind.ʺ  See In re TPG Troy, LLC, 492 B.R. 150, 154 
 3

(Bankr. S.D.N.Y. 2013). 

 5 
 
 No. 13‐3325 
 Cortlandt St. Recovery Corp. v. Hellas Telecommunications, S.à.r.l. 
 
6907548, 2014 U.S. Dist. LEXIS 170277 (S.D.N.Y. Dec. 9, 2014); Cortlandt St. 

Recovery Corp. v. Deutsche Bank AG, London Branch, No. 12 CIV. 9351 JPO, 2013 

WL 3762882, 2013 U.S. Dist. LEXIS 100741 (S.D.N.Y. July 18, 2013), appeal 

dismissed (Sept. 16, 2013); Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.à.r.l., 

996 N.Y.S.2d 476 (N.Y. Sup. Ct. Sept. 16, 2014) (consolidating four actions 

initiated by Cortlandt on the Sub and PIK Notes). 

 In one of these other actions, Cortlandt brought suit on the Sub Notes 

against Deutsche Bank AG, London Branch (ʺDeutsche Bankʺ), alleging it to be 

an underwriter of the Sub Notes.  Cortlandt St. Recovery Corp. v. Deutsche Bank 

AG, London Branch, No. 12 CIV. 9351 JPO, 2013 WL 3762882, 2013 U.S. Dist. 

LEXIS 100741 (S.D.N.Y. July 18, 2013) (the ʺDeutsche Bank Opinionʺ), appeal 

dismissed (Sept. 16, 2013); see also Complaint at 2, Cortlandt St. Recovery Corp. v. 

Deutsche Bank AG, London Branch, No. 12 CIV. 9351 JPO (S.D.N.Y. 2013).  In both 

the Deutsche Bank action and the present one, the defendants moved to dismiss 

on several grounds, including that the court lacked subject matter jurisdiction 

over the action.  See Fed. R. Civ. P. 12(b)(1).  Specifically, the defendants argued 

that Cortlandt lacked title to the Sub Notes and therefore lacked Article III 

 6 
 
 No. 13‐3325 
 Cortlandt St. Recovery Corp. v. Hellas Telecommunications, S.à.r.l. 
 
standing to bring claims related to those notes.  See Deutsche Bank Op., 2013 WL 

3762882, at *1 & n.1, 2013 U.S. Dist. LEXIS 100741, at *1 & n.1. 

 The district court granted the defendantsʹ motions to dismiss in both cases.  

In July 2013, the court issued an order and opinion in the Deutsche Bank case 

concluding that Cortlandt had failed adequately to plead title to claims arising 

under the Sub Notes and that Cortlandt had therefore failed adequately to plead 

facts on which Article III standing could be based.  See Deutsche Bank Op., 2013 

WL 3762882, at *3, 2013 U.S. Dist. LEXIS 100741, at *9‐10.  In August 2013, the 

court issued an order in the present action explaining that the action was 

dismissed without prejudice ʺ[f]or the reasons set forth in [the Deutsche Bank 

Opinion].ʺ  Order, Cortlandt St. Recovery Corp. v. Aliberti, No. 12 Civ. 8685 JPO 

(S.D.N.Y. Aug. 2, 2013).4  

 Cortlandt appealed. 

   DISCUSSION 
 Cortlandt argues that the district court erred in granting the defendantsʹ 

motion to dismiss its complaint for lack of subject matter jurisdiction pursuant to 

Fed. R. Civ. P. 12(b)(1).  Cortlandt further asserts that the district court erred in 

                                                            
 4  Defendant Giancarlo Aliberti was voluntarily dismissed from the action. 

 7 
 
 No. 13‐3325 
 Cortlandt St. Recovery Corp. v. Hellas Telecommunications, S.à.r.l. 
 
failing to grant to it the opportunity to cure any standing defect under Fed. R. 

Civ. P. 17(a)(3), which allows for ʺthe real party in interest to ratify, join, or be 

substituted intoʺ a pending action.  We disagree with both contentions. 

 I. Standard of Review 
 A district court properly dismisses an action under Fed. R. Civ. P. 12(b)(1) 

for lack of subject matter jurisdiction if the court ʺlacks the statutory or 

constitutional power to adjudicate it,ʺ Makarova v. United States, 201 F.3d 110, 113 

(2d Cir. 2000), such as when (as in the case at bar) the plaintiff lacks 

constitutional standing to bring the action.  See W.R. Huff Asset Mgmt. Co., LLC v. 

Deloitte & Touche LLP, 549 F.3d 100, 104, 106 (2d Cir. 2008); see also Alliance for 

Envtl. Renewal, Inc. v. Pyramid Crossgates Co., 436 F.3d 82, 88 n.6 (2d Cir. 2006) 

(ʺ[T]he proper procedural route [for standing challenges at the pleadings stage] 

is a motion under Rule 12(b)(1).ʺ).  On appeal from a dismissal under Rule 

12(b)(1), we review the courtʹs factual findings for clear error and its legal 

conclusions de novo.  Makarova, 201 F.3d at 113. 

 The plaintiff bears the burden of ʺalleg[ing] facts that affirmatively and 

plausibly suggest that it has standing to sue.ʺ  Amidax Trading Grp. v. S.W.I.F.T. 

SCRL, 671 F.3d 140, 145 (2d Cir. 2011).   In assessing the plaintiffʹs assertion of 

 8 
 
 No. 13‐3325 
 Cortlandt St. Recovery Corp. v. Hellas Telecommunications, S.à.r.l. 
 
standing, ʺwe accept as true all material allegations of the complaint[] and . . . 

construe the complaint in favor of the complaining party.ʺ  W.R. Huff, 549 F.3d at 

106 (internal quotation marks omitted).  In deciding a Rule 12(b)(1) motion, the 

court may also rely on evidence outside the complaint.  Makarova, 201 F.3d at 113. 

 ʺ[A] district courtʹs decision whether to dismiss pursuant to Rule 17(a) is 

reviewed for abuse of discretion.ʺ  Stichting Ter Behartiging Van de Belangen Van 

Oudaandeelhouders In Het Kapitaal Van Saybolt Intʹl B.V. v. Schreiber, 407 F.3d 34, 

43‐44 (2d Cir.), certified question accepted, 5 N.Y.3d 730, 832 N.E.2d 1185 (2005), 

certified question withdrawn sub nom. Intʹl B.V. (Found. of Sʹholdersʹ Comm. 

Representing Former Sʹholders of Saybolt Intʹl B.V.) v. Schreiber, 421 F.3d 124 (2d Cir. 

2005). 

 II. Standing 
 ʺIn its constitutional dimension, standing imports justiciability: whether 

the plaintiff has made out a ʹcase or controversyʹ between himself and the 

defendant within the meaning of Art. III.ʺ   Warth v. Seldin, 422 U.S. 490, 498 

(1975).  To have such Article III standing, ʺthe plaintiff [must have] ʹalleged such 

a personal stake in the outcome of the controversyʹ as to warrant [its] invocation 

of federal‐court jurisdiction and to justify exercise of the courtʹs remedial powers 

 9 
 
 No. 13‐3325 
 Cortlandt St. Recovery Corp. v. Hellas Telecommunications, S.à.r.l. 
 
on [its] behalf.ʺ  Id. at 498‐99 (quoting Baker v. Carr, 369 U.S. 186, 204 (1962)).  

Others may benefit ʺcollaterallyʺ from a resolution favorable to the plaintiff, id. at 

499, or suffer from an unfavorable one, but the plaintiffʹs genuinely personal 

stake ensures the presence of ʺthat concrete adverseness which sharpens the 

presentation of issues upon which [a] court so largely depends.ʺ  Baker, 369 U.S. 

at 204. 

 A plaintiff claiming such a stake must establish, first, that it has sustained 

an ʺinjury in factʺ which is both ʺconcrete and particularizedʺ and ʺactual or 

imminent,ʺ Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992) (internal 

quotation marks omitted); second, that the injury was in some sense caused by 

the opponentʹs action or omission, id.; and finally, that a favorable resolution of 

the case is ʺlikelyʺ to redress the injury, id. at 561.  These elements form an 

ʺirreducible constitutional minimumʺ without which a federal court may not 

proceed to the merits of a claim.  Id. at 560.  ʺ[T]he jurisdictional issue must be 

resolved before the merits issue . . . .ʺ  Alliance For Envtl. Renewal, 436 F.3d at 85. 

 Cortlandt does not allege that it has suffered direct injury as a result of the 

defendantsʹ actions.  It points instead to the well‐established principle that 

ʺ[l]awsuits by assignees . . . are ʹcases and controversies of the sort traditionally 

 10 
 
 No. 13‐3325 
 Cortlandt St. Recovery Corp. v. Hellas Telecommunications, S.à.r.l. 
 
amenable to, and resolved by, the judicial process.ʹʺ  Sprint Commcʹns Co., L.P. v. 

APCC Servs., Inc., 554 U.S. 269, 285 (2008) (quoting Vt. Agency of Natural Res. v. 

United States ex rel. Stevens, 529 U.S. 765, 777–78 (2000)).  The defendants, for their 

part, do not dispute that an assignment of claims from the noteholders to 

Cortlandt would allow Cortlandt to ʺstand in the place of the injured partyʺ and 

satisfy constitutional standing requirements.  W.R. Huff, 549 F.3d at 107.  Neither 

do they dispute that the noteholders could have assigned their claims to 

Cortlandt.  See Advanced Magnetics, Inc. v. Bayfront Partners, Inc., 106 F.3d 11, 17 

(2d Cir. 1997) (ʺIn general, claims or choses in action may be freely transferred or 

assigned to others.ʺ).  Instead, the parties dispute whether the noteholders 

actually did assign the claims such that Cortlandt has standing to bring suit on 

the Sub Notes. 

 To assign a claim effectively, the claimʹs owner ʺmust manifest an intention 

to make the assignee the owner of the claim.ʺ  Id. (internal quotation marks and 

brackets omitted).  A would‐be assignor need not use any particular language to 

validly assign its claim ʺso long as the language manifests [the assignorʹs] 

intention to transfer at least title or ownership, i.e., to accomplish ʹa completed 

transfer of the entire interest of the assignor in the particular subject of 

 11 
 
 No. 13‐3325 
 Cortlandt St. Recovery Corp. v. Hellas Telecommunications, S.à.r.l. 
 
assignment.ʹʺ  Id. (emphasis added) (citations omitted).  An assignorʹs grant of, 

for example, ʺʹthe power to commence and prosecute to final consummation or 

compromise any suits, actions or proceedings,ʹʺ id. at 18 (quoting agreements that 

were the subject of that appeal), may validly create a power of attorney, but that 

language would not validly assign a claim, because it does ʺnot purport to 

transfer title or ownershipʺ of one.  Id. 

 Cortlandt has not carried its burden of showing a valid assignment of a 

claim.  First, Cortlandtʹs complaint does not allege ʺa completed transferʺ of the 

noteholdersʹ ʺentire interestʺ in any claim arising under the Sub Notes.  Id. at 17.  

The complaint alleges that Cortlandt was assigned ʺfull rights under the 

assignments to collect principal and interest due and to pursue all remedies,ʺ 

Pl.ʹs First Am. Compl. ¶ 12 (J.A. 60), and that Cortlandt is ʺauthorized to sue and 

collect on the Sub Notesʺ on behalf of the assignors, id. ¶ 108 (J.A. 82).  It does 

not, however, indicate that Cortlandt was assigned ownership of the claims.  

Cortlandt argues that an ʺassignment of full rights to collect is sufficientʺ to 

satisfy the injury‐in‐fact requirement.  Appellantʹs Br. at 11.  But, as we have 

explained, 

 [a] provision by which one person grants another the power to sue 
 on and collect on a claim confers on the grantee a power of attorney 
 12 
 
 No. 13‐3325 
 Cortlandt St. Recovery Corp. v. Hellas Telecommunications, S.à.r.l. 
 
 with respect to that claim.  The grant of a power of attorney, 
 however, is not the equivalent of an assignment of ownership; and, 
 standing alone, a power of attorney does not enable the grantee to 
 bring suit in his own name. 
Advanced Magnetics, 106 F.3d at 17‐18 (citations omitted); cf. 6A Charles Alan 

Wright et al., Fed. Prac. & Proc. Civ. § 1545 (3d ed. 2014) (ʺ[T]he mere transfer of 

a general power of attorney . . . does not create a sufficient interest or right in the 

chose and the grantor of the power remains the only real party in interest.ʺ). 

 Nor has Cortlandt pointed to anything in the assignment, or to other 

evidence in the record, suggesting that title to claims arising under the Sub Notes 

was assigned to it.5  The assignment reads: 

 The Noteholder hereby assigns to Cortlandt Street Recovery 
 Corp. . . . full rights to collect amounts of principal and interest due 
 on the Notes, and to pursue all remedies with respect to the Notes 
 against Hellas Finance [or various other related entities] . . . and any 
 other person or entity who may be liable to Noteholder.  The 
 Noteholder remains the owner of the Notes and person in whose 
 name the Notes are registered. 
 The Noteholder hereby irrevocably appoints [Cortlandt] its true and 
 lawful attorney and proxy, with full power of substitution, to pursue 
 collection and all remedies with respect to the Notes . . . .  Under this 
 appointment [Cortlandt] shall have all requisite power and 
 authority . . . to make any request or demand or to take any other 

                                                            
    As noted above: ʺIn resolving a motion to dismiss for lack of subject matter 
 5

jurisdiction under Rule 12(b)(1), a district court may refer to evidence outside the 
pleadings.ʺ  Makarova, 201 F.3d at 113.   

 13 
 
 No. 13‐3325 
 Cortlandt St. Recovery Corp. v. Hellas Telecommunications, S.à.r.l. 
 
 action under or with respect to the Notes, or under the December 21, 
 2006 Indenture under which the Notes were issued. 
J.A. 109‐10.  The language of the assignment confirms that Cortlandt was 

authorized to collect payment on behalf of the noteholders, but it does not so 

much as hint that title to the claims at issue was being transferred.  An 

assignment such as the one in issue, which does not transfer ownership of claims, 

is, on its own, ʺinsufficient to permit [a purported assignee] to sue on those 

claims in its name.ʺ  Advanced Magnetics, 106 F.3d at 18. 

 Cortlandt urges us to reconsider the approach of Advanced Magnetics in 

light of Sprint Communications Co., L.P. v. APCC Services, Inc., 554 U.S. 269 (2008).  

We think Advanced Magnetics remains persuasive.  In Sprint, payphone operators 

had assigned their right to collect specified payments from telephone carriers to 

collection firms called ʺaggregators.ʺ  Id. at 271‐72.  Through a separate 

agreement, the aggregators agreed to remit any payments obtained from the 

carriers to the payphone operators, less a fee for the aggregatorsʹ services.  Id. at 

272.  The aggregators brought suit against the carriers.  Id.  The carriers moved to 

dismiss the complaint on the ground that the remittance agreement deprived the 

aggregators—mere ʺassignees for collectionʺ—of any real interest in the claims 

and, therefore, of standing to pursue them, despite the valid assignment.  Id. 

 14 
 
 No. 13‐3325 
 Cortlandt St. Recovery Corp. v. Hellas Telecommunications, S.à.r.l. 
 
 The Court rejected the carriersʹ challenge, recognizing the longstanding 

ʺhistorical tradition of suits by assignees, including assignees for collection.ʺ  Id. 

at 285.  Whatever the aggregators did with their payments post‐lawsuit, the 

Court reasoned, was of no constitutional moment.  After all, the aggregatorsʹ 

ʺinjuries would be redressed whether the aggregators remit[ted] the litigation 

proceeds to the payphone operators, donate[d] them to charity, or use[d] them to 

build new corporate headquarters.ʺ  Id. at 287. 

 Cortlandt argues that ʺ[n]othing in Sprint suggests that ʹtitleʹ or ʹownershipʹ 

must be recitedʺ in an assignment to confer standing upon an assignee.  

Appellantʹs Reply Br. at 4.  But Sprint did not focus on the aggregatorsʹ title to the 

claims because there was ʺno reason to believe the assignment [was] anything 

less than a complete transfer to the aggregator[s] of the injury and resulting 

claim.ʺ  Sprint, 554 U.S. at 286 (internal quotation marks omitted).  The 

assignment at issue in Sprint ʺassign[ed], transfer[red] and set[] over to [the 

aggregator] for purposes of collection, all rights, title and interest of the [payphone 

operators] in [the operatorsʹ] claims, demands, or causes of action.ʺ  Id. at 272 

(emphases added).  The assignment here, by contrast, confers only ʺfull rights to 

collect amounts of principal and interest due on the Notes, and to pursue all 

 15 
 
 No. 13‐3325 
 Cortlandt St. Recovery Corp. v. Hellas Telecommunications, S.à.r.l. 
 
remedies with respect to the Notes,ʺ making no mention of title to, or ownership 

of, the claims.  Whereas the payphone operators in Sprint ʺassigned their claims 

to the aggregators lock, stock, and barrel,ʺ id. at 286, the noteholders in the case at 

bar assigned to Cortlandt only the ability to collect under the claims.  Although 

Sprint confirms that an assignee need not possess more than title to a claim to 

bring suit upon that claim, nothing in that case suggests that an assignee may 

proceed with less. 

 If there was any doubt about the continuing relevance of Advanced 

Magnetics in light of Sprint, it was settled by W.R. Huff Asset Management Co., LLC 

v. Deloitte & Touche LLP, 549 F.3d 100 (2d Cir. 2008).  There we concluded that 

Sprint ʺimplicitly supports the holding of Advanced Magnetics that a mere power‐

of‐attorney . . . does not confer standing to sue in the holderʹs own right.ʺ  Id. at 

108.  It is still true that ʺthe minimum requirement for an injury‐in‐fact is that the 

plaintiff have legal title to, or a proprietary interest in, the claim.ʺ  Id. 

 Cortlandt argues, finally on this score, that an assignment of rights to 

collect payments under the Notes and to pursue all remedies under the notes 

confers an interest ʺat least as broad asʺ that conferred by an assignment of title.  

Appellantʹs Br. at 12.  The dispositive inquiry does not go to the breadth of the 

 16 
 
 No. 13‐3325 
 Cortlandt St. Recovery Corp. v. Hellas Telecommunications, S.à.r.l. 
 
assignment, however, but rather to its nature.  ʺThere is an important distinction 

between simply hiring a lawyer and assigning a claim to a lawyer . . . .  The latter 

confers a property right (which creditors might attach); the former does not.ʺ  

Sprint, 554 U.S. at 289.  Our caselaw confirms that a purported assignee of a claim 

must plead a proprietary interest in that claim, and not simply the ability to 

pursue the claim on behalf of another, to bring the claim in his or her own name 

and satisfy the requirements of constitutional standing. 

 III. Rule 17 
 Cortlandt further argues that even if it lacked constitutional standing, the 

district court erred by not providing Cortlandt with the opportunity to cure this 

deficiency under Fed. R. Civ. P. 17(a)(3).   As noted above, ʺa district courtʹs 

decision whether to dismiss pursuant to Rule 17(a) is reviewed for abuse of 

discretion.ʺ  Schreiber, 407 F.3d at 43‐44. 

 Rule 17(a)(1) requires that an action ʺbe prosecuted in the name of the real 

party in interest.ʺ  In Part II of our opinion, above, we concluded that the district 

court was correct in deciding that, absent an assignment of the claims in issue, 

this lawsuit was not brought or prosecuted in the name of the real party in 

interest.   But Rule 17(a)(3) prohibits a court from dismissing an action for failure 

 17 
 
 No. 13‐3325 
 Cortlandt St. Recovery Corp. v. Hellas Telecommunications, S.à.r.l. 
 
to comply with subsection (a)(1) ʺuntil, after an objection, a reasonable time has 

been allowed for the real party in interest to ratify, join, or be substituted into the 

action.ʺ 

 The real party in interest principle embodied in Rule 17 ensures that only 

ʺa person who possesses the right to enforce [a] claim and who has a significant 

interest in the litigationʺ can bring the claim.  Schreiber, 407 F.3d at 48 n.7 

(quoting Va. Elec. & Power Co. v. Westinghouse Elec. Corp., 485 F.2d 78, 83 (4th Cir. 

1973)); see also Oscar Gruss & Son, Inc. v. Hollander, 337 F.3d 186, 193 (2d Cir. 2003) 

(ʺ[A]n action must be brought by the person who, according to the governing 

substantive law, is entitled to enforce the right.ʺ (internal quotation marks 

omitted)).  The rule was initially adopted to ensure that assignees could bring 

suit in their own names, contrary to the common‐law practice.  See Fed. R. Civ. P. 

17 advisory committeeʹs notes, 1966 Amendment.  However, ʺthe modern 

function of the rule . . . is [] to protect the defendant against a subsequent action 

by the party actually entitled to recover, and to insure generally that the 

judgment will have its proper effect as res judicata.ʺ  Id.; see also Gogolin & Stelter 

v. Karnʹs Auto Imports, Inc., 886 F.2d 100, 102 (5th Cir. 1989) (ʺThe purpose of the 

rule is to prevent multiple or conflicting lawsuits by persons such as assignees, 

 18 
 
 No. 13‐3325 
 Cortlandt St. Recovery Corp. v. Hellas Telecommunications, S.à.r.l. 
 
executors, or third‐party beneficiaries, who would not be bound by res judicata 

principles.ʺ).  The dismissal provision in Rule 17(a)(3) was added later ʺto avoid 

forfeiture and injustice when an understandable mistake has been made in 

selecting the party in whose name the action should be brought.ʺ  6A Charles 

Alan Wright et al., Fed. Prac. & Proc. Civ. § 1555 (3d ed. 2014).  That provision 

codifies the modern ʺjudicial tendency to be lenient when an honest mistake has 

been made in selecting the proper plaintiff.ʺ  Id. 

 If a party successfully moves for ratification, joinder, or substitution, ʺthe 

action proceeds as if it had been originally commenced by the real party in 

interest.ʺ  Fed. R. Civ. P. 17(a)(3).  Crucially for statute of limitations purposes, 

the claim of the real party in interest therefore dates back to the filing of the 

complaint.  Cortlandt argues that although its lawsuit was dismissed for lack of 

subject matter jurisdiction, the dismissal was based solely on the fact that 

Cortlandt was not the real party in interest.  It should therefore have been 

permitted either to amend the complaint to substitute the parties who actually 

held the claims at issue as plaintiffs in the lawsuit, or to amend its agreement 

with the real parties in interest to transfer title to the claims to Cortlandt, thereby 

making it the real party interest. 

 19 
 
 No. 13‐3325 
 Cortlandt St. Recovery Corp. v. Hellas Telecommunications, S.à.r.l. 
 
 The defendantsʹ first argument to the contrary is that Cortlandt forfeited 

any Rule 17(a)(3) objection by failing to raise the issue before the district court.  

ʺ[I]t is a well‐established general rule that an appellate court will not consider an 

issue raised for the first time on appeal.ʺ   Bogle‐Assegai v. Connecticut, 470 F.3d 

498, 504 (2d Cir. 2006) (internal quotation marks omitted).  Cortlandt asserts that 

it preserved the objection by requesting the opportunity to amend its complaint 

ʺif the [c]ourt conclude[d] there [were] any defects or deficiencies.ʺ  Mem. in 

Oppʹn to the Sponsor Defs.ʹ Mot. to Dismiss at 25 n.21, Dkt. No. 68, Cortlandt St. 

Recovery Corp. v. Aliberti, No. 12 Civ. 8685 JPO (S.D.N.Y. Apr. 22, 2013); Mem. in 

Oppʹn to the Mot. to Dismiss of [the Hellas Defs.] at 24 n.22, Dkt. No. 77, 

Cortlandt St. Recovery Corp. v. Aliberti, No. 12 Civ. 8685 JPO (S.D.N.Y. May 31, 

2013).  

 Cortlandt did not explicitly refer to Rule 17 or specify a means by which it 

hoped to remedy any standing deficiency in the action as filed.  But it did invoke 

Rule 17 in the context of the defendantʹs standing objection in the Deutsche Bank 

action, arguing that it should have been given the opportunity to substitute the 

noteholders as the real parties in interest or to obtain a new assignment.  

Deutsche Bank Op., 2013 WL 3762882, at *3, 2013 U.S. Dist. LEXIS 100741, at *10‐

 20 
 
 No. 13‐3325 
 Cortlandt St. Recovery Corp. v. Hellas Telecommunications, S.à.r.l. 
 
11.  And the district court squarely addressed those arguments, denying the 

requests.  Id., 2013 WL 37628827, at *3 & n.4, 2013 U.S. Dist. LEXIS 100741 at *11‐

12 & 12 n.4.  Because the district court dismissed the present action ʺ[f]or the 

reasons set forthʺ in the Deutsche Bank Opinion, Order, Cortlandt St. Recovery 

Corp. v. Aliberti, No. 12 Civ. 8685 JPO (S.D.N.Y. Aug. 2, 2013), thus reaching and 

rejecting Cortlandtʹs implied 17(a)(3) objection, and because we may in any event 

exercise our discretion to consider an issue raised for the first time on appeal 

ʺwhere the argument presents a question of law and there is no need for 

additional fact‐finding,ʺ Bogle‐Assegai, 470 F.3d at 504 (internal quotation marks 

omitted), we decline to conclude that Cortlandt has forfeited its rights under 

Rule 17. 

 The question then is whether the district court abused its discretion in 

denying an amendment request under Rule 17.  We have had few occasions on 

which to address this issue.  See Schreiber, 407 F.3d at 43 (noting that as of 2005 

ʺthis [C]ircuit appears never to have stated the proper standard of review for a 

district courtʹs application of the curative procedures set forth in that ruleʺ).  In 

Advanced Magnetics, our Circuitʹs leading case interpreting the Rule, we 

concluded that the assignment agreements in issue ʺwere insufficient to transfer 

 21 
 
 No. 13‐3325 
 Cortlandt St. Recovery Corp. v. Hellas Telecommunications, S.à.r.l. 
 
to [the plaintiff] ownership of the claims of the [assignors] and hence were 

insufficient to permit [the plaintiff] to sue on those claims in its name.ʺ  106 F.3d 

at 18 (emphasis added).  

 We nonetheless returned the case to the district court directing ʺthat leave 

to file the proposed amended complaint substituting the [assignors] as plaintiffs 

to pursue their own claims [be] granted under Rule 17(a).ʺ  Id. at 21.  We 

reasoned that such substitution was warranted for three reasons:   First, ʺ[t]he 

complaintʹs only pertinent flaw was the identity of the party pursuing those 

claims.ʺ  Id. at 20.  In other words, the proposed amended complaint sought only 

to substitute one name for another; the factual and legal allegations of the 

complaint would remain unaltered.  Second, there was no indication of ʺbad faith 

or . . . an effort to deceive or prejudice the defendants.ʺ  Id. at 21.  Finally, the 

proposed substitution did not threaten to prejudice the defendants, who had 

timely notice of the substance of the allegations, the relevant parties, and their 

claims.  Id.   

 But the facts underlying our decision in Advanced Magnetics differ from 

those in the case at bar in at least one significant respect:  There, unlike here, the 

named plaintiff had standing irrespective of any amendment under Rule 17 to 

 22 
 
 No. 13‐3325 
 Cortlandt St. Recovery Corp. v. Hellas Telecommunications, S.à.r.l. 
 
pursue at least some of its claims against the defendants; Cortlandt did not.  The 

district court here followed the lead of several other district courts in this Circuit 

by distinguishing Advanced Magnetics based on that difference.6  See, e.g., Clarex 

Ltd. v. Natixis Sec. Am. LLC, No. 12 CIV. 0722 PAE, 2012 WL 4849146, at *8, 2012 

U.S. Dist. LEXIS 147485, at *20‐21 (S.D.N.Y. Oct. 12, 2012); In re SLM Corp. Sec. 

Litig., 258 F.R.D. 112, 115 (S.D.N.Y. 2009). 

 In Cortlandtʹs case, absent a complete assignment of the only claims on 

which the lawsuit was based, there was no valid lawsuit pending before the 

district court in which to permit an amended complaint.  The district court 

reasoned that ʺ[s]tanding . . . ʹis to be determined as of the commencement of 

suit.ʹ  Lujan, 504 U.S. at 570 n. 5.  A court may not permit an action to continue, 

even where the jurisdictional deficiencies have been subsequently cured, ʹif 

jurisdiction [was] lacking at the commencement of a suit . . . .ʹ  Disability 

Advocates, Inc. v. N.Y. Coal. for Quality Assisted Living, Inc., 675 F.3d 149, 160 (2d 

Cir. 2012).ʺ  Deutsche Bank Op., 2013 WL 3762882, at *3, 2013 U.S. Dist. LEXIS 

100741, at *11 (second ellipsis in original).  The court also noted that ʺʹwhere 

                                                            
  Advanced Magnetics did not explicitly rely on the fact that the plaintiff had standing 
 6

on some claims to reach the plaintiffʹs Rule 17 objection as to the other claims, nor did it 
examine the relationship between constitutional standing requirements and Rule 17. 

 23 
 
 No. 13‐3325 
 Cortlandt St. Recovery Corp. v. Hellas Telecommunications, S.à.r.l. 
 
courts in this Circuit have used [] Rule 17(a)(3) to remedy defects in standing, 

they have generally done so where the plaintiff clearly had standing on another 

claim that it brought.ʹʺ  Id., 2013 U.S. Dist. LEXIS 100741, at *11‐12 (quoting Clarex 

Ltd., 2012 WL 4849146, at *8, 2012 U.S. Dist. LEXIS 147485, at *22) (brackets in 

original).  In other words, in the absence of a plaintiff with standing, this lawsuit 

was a nullity, and there was therefore no lawsuit pending for the real party in 

interest to ʺratify, join, or be substituted intoʺ under Rule 17(a)(3) or otherwise. 

 The question whether a plaintiff may use Rule 17(a)(3) to remedy a 

standing deficiency when it lacks standing as to all of its claims – as is the case 

here – appears to be an issue of first impression in this Court, if not the district 

courts in this Circuit.  See W.R. Huff, 549 F.3d at 104 n.3 (avoiding Rule 17(a) 

question where only issue on appeal was constitutional standing); Lunney v. 

United States, 319 F.3d 550, 556‐57 (2d Cir. 2003) (avoiding Rule 17(a) question by 

affirming dismissal on other jurisdictional grounds).  At least one other circuit 

has addressed the question, see Zurich Ins. Co. v. Logitrans, Inc., 297 F.3d 528, 531 

(6th Cir. 2002) (plaintiff that ʺhad no standing to bring th[e] action [had] no 

standing to make a motion to substitute the real party in interestʺ), although this 

decision has met with some criticism, see, e.g., Park B. Smith, Inc. v. CHF Indus. 

 24 
 
 No. 13‐3325 
 Cortlandt St. Recovery Corp. v. Hellas Telecommunications, S.à.r.l. 
 
Inc., 811 F. Supp. 2d 766, 773‐74 & n.3 (S.D.N.Y. 2011) (declining to follow Zurich 

Insurance Co. based on the district courtʹs view that that case adopted an 

unnecessarily ʺrigidʺ approach); 13A Charles Alan Wright et al., Fed. Prac. & 

Proc. Civ. § 3531 n.61 (3d ed. 2014) (characterizing Zurich Insurance Co. as 

ʺparticularly troublingʺ).  

 We need not, however, resolve this question to dispose of Cortlandtʹs 

request to attempt to cure the standing defect under Fed. R. Civ. P. 17(a)(3).  We 

affirm because neither of the requests made by Cortlandt in its effort to cure the 

standing problem would have been consistent with Rule 17(a)(3).  Therefore, the 

district courtʹs decision to deny relief under that rule was not an abuse of 

discretion. 

 Cortlandt made two specific, alternative requests:  first, to substitute the 

noteholders for it as plaintiffs, or, second, for leave to obtain a new assignment 

from the noteholder vesting in Cortlandt sufficient title to maintain this lawsuit.7  

                                                            
 7  As the district court described it: 
 During a recent telephone conference, Cortlandt suggested that, were the 
 [c]ourt to hold that Cortlandt lacked standing, it should be permitted to 
 cure the deficiency by ʺinterven[ing] the real party . . . or establish[ing] 
 authorizationʺ through a new agreement. (Trans. at 5:16‐18; see also id. at 
 5:18‐22 (Plaintiffʹs Counsel: ʺIf [Defense Counsel] is questioning whether 
 the authorization is sufficient, rather than to say that this is sufficient 
 25 
 
 No. 13‐3325 
 Cortlandt St. Recovery Corp. v. Hellas Telecommunications, S.à.r.l. 
 
We conclude that neither provides the plaintiff with a means of employing the 

provisions of Rule 17(a)(3) to solve its standing problems.  

 As to Cortlandtʹs first request, substitution of the noteholders as plaintiffs 

would cure the standing defect.  Simultaneously and necessarily, though, it 

would create a different, fatal jurisdictional defect.  Cortlandt conceded at oral 

argument that the noteholders, foreign citizens, are not diverse from the 

defendants, also foreign entities.  While 

 diversity is present when the action is between ʺcitizens of a State and 
 citizens or subjects of a foreign state,ʺ 28 U.S.C. § 1332(a)(2), or between 
 ʺcitizens of different States and in which citizens or subjects of a foreign 
 state are additional parties,ʺ id. § 1332(a)(3)[,] diversity is lacking within 
 the meaning of these sections where the only parties are foreign entities. 
  
Universal Licensing Corp. v. Paola del Lungo S.p.A., 293 F.3d 579, 580‐81 (2d Cir. 

2002).  It is undisputed that the only potential basis for federal subject matter 

jurisdiction in this case is diversity.  We have explained that ʺ[t]he procedural 

mechanisms set forth in Rule 17(a) for ameliorating real party in interest 

problems may not, under the Rules Enabling Act, 28 U.S.C. § 2072(b), be 

employed to expand substantive rights.ʺ  Schreiber, 407 F.3d at 49.   Thus, ʺRule 

                                                                                                                                                                                                
 where he says it isnʹt, he is just giving me language that he wants to see, 
 why donʹt I just go out and get it?ʺ). 
Deutsche Bank Op., 2013 WL 3762882, at *3, 2013 U.S. Dist. LEXIS 100741, at *10‐11. 

 26 
 
 No. 13‐3325 
 Cortlandt St. Recovery Corp. v. Hellas Telecommunications, S.à.r.l. 
 
17(a) . . . does not extend or limit the subject matter jurisdiction of a federal courtʺ 

by conferring subject matter jurisdiction when it would ʺnot otherwise exist.ʺ  

Airlines Reporting Corp. v. S & N Travel, Inc., 58 F.3d 857, 861 n.4 (2d Cir. 1995) 

(internal quotation marks omitted); see also Lunney, 319 F.3d at 556‐57.  Because 

the noteholders Cortlandt sought to substitute would have lacked subject matter 

jurisdiction to bring the claims, the district court did not abuse its discretion by 

denying Cortlandtʹs request to substitute those entities under Rule 17(a)(3).  See 4 

Mooreʹs Federal Practice 3D § 17.12[1][c] (ʺIf joinder or substitution of, or 

ratification by, a real party in interest would destroy the courtʹs jurisdiction, the 

action must be dismissed.ʺ). 

 If Cortlandtʹs second request—for leave to obtain a new assignment—were 

pursued, diversity jurisdiction would not appear to present a barrier.  The 

diversity jurisdiction that now obtains between the plaintiff and the defendants 

would survive.  But while granting Cortlandtʹs request to create and execute a 

new assignment transferring complete title and ownership of the claims in issue 

to Cortlandt might theoretically create a claim litigable by Cortlandt, it would 

not enable Cortlandt to alter its complaint in the district court pursuant to Rule 

17(a)(3) to reflect the contents of the revised transfer.   

 27 
 
 No. 13‐3325 
 Cortlandt St. Recovery Corp. v. Hellas Telecommunications, S.à.r.l. 
 
 As we have discussed, Cortlandtʹs First Amended Complaint alleges that it 

was assigned ʺfull rights under the assignments to collect principal and interest 

due and to pursue all remedies.ʺ  Pl.ʹs First Am. Compl. ¶ 12 (J.A. 60).  In order to 

have standing, however, Cortlandt would have to allege that it was assigned title 

to the claims, not merely a power of attorney.  A new assignment would ʺalter[] 

the original complaintʹs factual allegations as to the events or the participants,ʺ 

Advanced Magnetics, 106 F.3d at 20, because the language of the new complaint, to 

cure the standing bar, would necessarily reflect the contents of the new 

assignment. 

 We have ordinarily allowed amendments under Rule 17 only ʺwhen a 

mistake has been made as to the person entitled to bring suit and such 

substitution will not alter the substance of the action.ʺ  Park B. Smith, Inc., 811 F. 

Supp. 2d at 773.  Cortlandtʹs legal claims might remain unaltered if a new 

assignment were substituted for the old one, but the factual allegations 

supporting them would not.  Unlike a substitution, such as the one requested in 

Advanced Magnetics or Zurich Insurance Co., pleading the existence of a new and 

substantively different assignment would require more than a ʺmerely formalʺ 

alteration of the complaint.  See Advanced Magnetics, 106 F.3d at 20.  Such an 

 28 
 
 No. 13‐3325 
 Cortlandt St. Recovery Corp. v. Hellas Telecommunications, S.à.r.l. 
 
attempt to employ Rule 17(a)(3) to cure the standing problem here would thus be 

fated to fail. 

 We cannot rule out the possibility that Cortlandt might have avoided these 

challenging procedural pitfalls through a request for leave to obtain a valid 

assignment under some other rule of civil procedure.  It did not.  It has relied 

upon only Rule 17 in the present appeal.  For the reasons set forth above, its 

request falls outside the bounds of the proper application of that rule. 8 

   

                                                            
  We have apparently never, in a precedential opinion, adopted a rule to the effect 
 8

ʺthat even when [a] claim is not assigned until after [an] action has been instituted, the 
assignee is the real party in interest and can maintain the action.ʺ  6A Charles Alan 
Wright et al., Fed. Prac. & Proc. Civ. § 1545 (3d ed. 2014); see, e.g., Dubuque Stone Prod. 
Co. v. Fred L. Gray Co., 356 F.2d 718, 724 (8th Cir. 1966); Kilbourn v. W. Sur. Co., 187 F.2d 
567, 571 (10th Cir. 1951); see also 4 Mooreʹs Federal Practice § 17.11[1][e].  But see 
Lambrinos v. Exxon Mobil Corp., 349 F. Appʹx 613, 614 (2d Cir. 2009) (summary order) 
(apparently relying on this rule).  The ʺruleʺ apparently predates adoption of Rule 
17(a)(3), but modern courts sometimes support their approval of such post‐
commencement assignment by reference to Rule 17(a).  See, e.g., Campus Sweater & 
Sportswear Co. v. M. B. Kahn Constr. Co., 515 F. Supp. 64, 84 (D.S.C. 1979), affʹd, 644 F.2d 
877 (4th Cir. 1981).  We need not determine under what circumstances, if ever, a post‐
commencement assignment might be appropriate under 17(a)(3) or some other 
provision of the Federal Rules, although we note that Advanced Magnetics suggests that 
17(a)(3) alone would not authorize such an assignment under these circumstances.  
Cortlandt has not made this argument in the district court or before us.  See McCarthy v. 
S.E.C., 406 F.3d 179, 186 (2d Cir. 2005) (ʺWe think it reasonable to hold appellate counsel 
to a standard that obliges a lawyer to include his most cogent arguments in his opening 
brief, upon pain of otherwise finding them waived.ʺ). 

 29 
 
 No. 13‐3325 
 Cortlandt St. Recovery Corp. v. Hellas Telecommunications, S.à.r.l. 
 
 Conclusion 

  For the foregoing reasons, the district court did not err in concluding that 

the plaintiff lacked standing nor did the court abuse its discretion in denying the 

plaintiff relief under Rule 17(a)(3).  It therefore did not err in dismissing the 

complaint without prejudice.  The judgment of the district court is therefore 

AFFIRMED. 

 30 
 
SACK, Circuit Judge, concurring: 

  Unsurprisingly, I concur in the foregoing opinion – I am, after all, its 

author.  I add this brief concurrence, though, to explain my view that a decision 

referred to in that opinion, Zurich Insurance Co. v. Logitrans, Inc., 297 F.3d 528 (6th 

Cir. 2002), is not the law of this Circuit, and also to express some doubt that it 

should be.  My colleagues point out that the resolution of this issue is not 

necessary to our resolution of this appeal, and decline, therefore, to express their 

views on the subject. 

 In Zurich Insurance Co., the Sixth Circuit affirmed the denial of a motion 

that had been brought in an attempt to cure a standing defect under Fed. R. Civ. 

P. 17(a)(3).  An insurance company subsidiary, Zurich Switzerland, initially 

thinking itself to be the subrogee of certain claims, requested leave of the district 

court to substitute the proper subrogee of all of those claims, a parallel 

subsidiary* referred to as American Guarantee.  Zurich Ins. Co., 297 F.3d at 530.  

The district court denied the motion, see id. at 530‐31, and the court of appeals 

affirmed, id.  The court of appeals concluded that because the plaintiff ʺhad no 

                                                            
  A separate opinion explained that Zurich Switzerland and American Guarantee were 
 *

ʺsister companies under the common ownership of a single corporate entity.ʺ  Zurich 
Insurance Co., 297 F.3d at 533 (Gilman, J., concurring). 

 1 
 
standing to bring th[e] action, [it had] no standing to make a motion to substitute 

the real party in interest.ʺ  Id. at 531.  The court explained: 

 An attorney made a mistake and filed the action in the name of Zurich 
 Switzerland, when Zurich Switzerland had no claims whatsoever against 
 the defendants, and no Article III standing to sue.  American Guarantee, a 
 totally separate entity, which was not vigilant in protecting its claims, 
 cannot now benefit from Zurich Switzerlandʹs mistake. 
Id. at 532.  The court cited other cases – Ensley v. Cody Resources, Inc., 171 F.3d 315, 

320 (5th Cir. 1999), and Whelan v. Abell, 953 F.2d 663, 672 (D.C. Cir. 1992) – in 

which courts first determined that a plaintiff had standing independent of any 

requested substitution before addressing the Rule 17 inquiry, Zurich Ins. Co., 297 

F.3d at 532.  Those cases did not address whether that order of operations was 

constitutionally required. 

 As our opinion notes, some courts and commentators have criticized 

Zurich Insurance Co.  See ante at 25.  I think this criticism has some merit.  It was 

undisputed in Zurich Insurance Co. that an entity, waiting in the wings and 

willing to become a party to the action, had a claim that could be ʺappropriately 

resolved through the judicial process.ʺ  Lujan v. Defenders of Wildlife, 504 U.S. 555, 

560 (1992) (internal quotation marks omitted).  The Zurich Insurance Co. court 

declined to permit the substitution, even though the kinds of concerns typically 

 2 
 
raised by a standing challenge, such as the risk that ʺa plaintiff raising only a 

generally available grievance about government—claiming only harm to his and 

every citizenʹs interest in proper application of the Constitution and laws, and 

seeking relief that no more directly and tangibly benefits him than it does the 

public at large,ʺ id. at 573‐74 — would inadequately present or defend his claim, 

would have been absent had the substitution been allowed.  The only bar to the 

courtʹs jurisdiction was a complaint heading containing the wrong clientʹs name. 

 To be sure, the Supreme Court has frequently said that a federal courtʹs 

constitutional authority to hear the merits of a case must be established at the 

outset of the litigation.  See, e.g., Mollan v. Torrance, 22 U.S. 537, 539 (1824) 

(ʺ[J]urisdiction . . . depends upon the state of things at the time of the action 

brought.ʺ).  This is said to be so both with respect to standing, see, e.g., Friends of 

the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 189 (2000) (standing 

ʺmust exist at the commencement of the litigationʺ), and with respect to other 

aspects of subject matter jurisdiction, see, e.g., Grupo Dataflux v. Atlas Global Grp., 

L.P., 541 U.S. 567, 570‐71 (2004) (ʺTh[e] time‐of‐filing rule . . . measures all 

challenges to subject‐matter jurisdiction premised upon diversity of citizenship 

against the state of facts that existed at the time of filing.ʺ). 

 3 
 
 But the jurisdiction‐at‐commencement rule is not absolute.  ʺIn cases where 

the plaintiff lacked initial standing or the case suffered from some other 

jurisdictional defect at the time suit is commenced, the Supreme Courtʹs cases are 

less than clear as to whether and how a jurisdictional defect can be remedied in 

the course of litigation.ʺ  Schreiber Foods, Inc. v. Beatrice Cheese, Inc., 402 F.3d 1198, 

1203 (Fed. Cir. 2005).  In some cases, a jurisdictional defect existing at the outset 

of litigation can be cured by subsequent events.  In the case of diversity 

jurisdiction, for example, the dropping‐out of a nondiverse plaintiff whose 

presence would otherwise defeat diversity confers diversity jurisdiction upon a 

federal court, provided other jurisdictional requirements are satisfied.  See, e.g., 

Grupo Dataflux, 541 U.S. at 572 (ʺ[D]ismissal of [a] party that had destroyed 

diversity . . . [as a] method of curing a jurisdictional defect ha[s] long been an 

exception to the time‐of‐filing rule.ʺ).  And several courts have held that a loss of 

standing after commencement of a litigation but prior to trial may be cured by 

reacquisition of standing or by joinder of a party with standing.  See, e.g., 

Schreiber Foods, 402 F.3d at 1204 (collecting cases); Corbin v. Blankenburg, 39 F.3d 

650, 654 (6th Cir. 1994) (en banc); but see id. at 655 (Celebrezze, J., dissenting). 

 4 
 
 Moreover, in the case of a substitution request such as in Zurich Insurance 

Co., allowing substitution may be ʺʹthe wiser answer to the problem of expediting 

trials and avoiding unnecessary delay and expense of requiring an action to be 

started anew where a substitution is desired though the subject matter of the 

actions remains identical.ʹʺ  Park B. Smith, Inc. v. CHF Indus. Inc., 811 F. Supp. 2d 

766, 774 (S.D.N.Y. 2011) (quoting Natʹl Mar. Union of Am. v. Curran, 87 F. Supp. 

423, 426 (S.D.N.Y. 1949)).  The cases cited by the Advisory Committee in the note 

explaining the adoption of Rule 17(a)(3), Levinson v. Deupree, 345 U.S. 648 (1953), 

and Link Aviation, Inc. v. Downs, 325 F.2d 613 (D.C. Cir. 1963), take a similarly 

pragmatic approach.  In the latter case, for example, parties who had subrogated 

their interests in a given claim mistakenly brought suit in their own names, 

rather than in the names of the subrogees.  Link Aviation, 325 F.2d at 613‐14.  The 

court reasoned that this error, while significant, did not render the suit ʺa 

nullity.ʺ  Id. at 615.  It concluded that substitution of the subrogees was merited.  

Id.  The court explained: 

 Any other rule would be highly technical without meaningful purpose. 
 The complaint alleged injury at the hands of the defendants. The suit was 
 to recover therefor. That the recovery, if made, would inure not to the 
 benefit of the nominal plaintiffs, but to that of the [subrogees] . . . did not 
 deprive the suit of a status which enabled the [subrogees] to substitute 
 themselves as plaintiffs and continue the suit in their own names. 

 5 
 
Id.   

 Of course, jurisdictional requirements imposed by the Constitution cannot 

be cast aside because they are onerous or require expense, or because the results 

of their application appear unfair or unduly technical.  But here the concerns 

animating a constitutional principle are absent, so it seems to me that practical 

considerations may ultimately prevail. 

 Concededly, the plaintiffʹs request in the case at bar to obtain a post‐

commencement assignment may implicate different concerns than the type of 

substitution request at issue in Zurich Insurance Co.  The latter entails a change in 

name only, while the former seems to involve a change in the status quo ante, in 

that Cortlandt would have to obtain title to claims to which it currently lacks 

title.  Even so, having considered this issue in the course of reaching a result on 

other legal grounds, I have come to doubt that our Court should, when directly 

confronted by the issue, adopt the categorical approach taken the by the Sixth 

Circuit. 

 6